[No. F007421. Fifth Dist. May 9, 1988.]

NUNES TURFGRASS, INC., Plaintiff and Appellant, v. VAUGHAN-JACKLIN SEED COMPANY, INC., Defendant and Appellant.

**[Opinion certified for partial publication.†]**

---

† Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part IV.

COUNSEL

Titchell, Maltzman, Mark, Bass, Ohleyer & Mishel, Thomas M. Bruen and Alan D. Miller for Plaintiff and Appellant.

Trimbur, Davis, Clark & Jacobson, Kevin L. Clark and Bradley L. Young for Defendant and Appellant.

OPINION

MARTIN, Acting P. J.—Plaintiff sod grower and defendant seed company both appeal from a judgment in a breach of warranty/product liability action arising from the sale of contaminated ryegrass seed.

FACTS

In 1981, plaintiff, Nunes Turfgrass, Inc., was a California corporation based in Modesto with sales outlets in seven other California cities. Plaintiff

had engaged in business since June 1962 and in 1981 represented itself as the largest independent sod grower in California. Defendant Vaughan-Jacklin Seed Company, Inc., was a corporate grower, developer, and commercial retailer of grass seed based in Post Falls, Idaho. At the time of trial, defendant had been engaged in business for 50 years and was one of the largest seed companies in the world. Plaintiff and defendant conducted business with one another beginning in the early or mid-1960's and continuing until at least 1981. Defendant sold plaintiff seed for its sod fields and for a line of seed mixes sold under the Nunes name to landscapers, golf courses, and the general public.

Prior to 1980, plaintiff produced sods consisting of bluegrass, bluegrass blend, and bermuda. In 1980, plaintiff's president, John Nunes, Jr., perceived customer demand for a hardier, more drought-resistant bluegrass-perennial ryegrass blend. Nunes contacted Doyle Jacklin, defendant's sales/marketing manager, explained the need, and asked him to recommend a variety of perennial ryegrass suitable for overseeding fields previously planted with bluegrass. Jacklin researched the request and recommended a new variety, Jackpot perennial ryegrass. John Nunes relied on the recommendation based on his longstanding working relationship with Doyle Jacklin and defendant.

In August or September 1981, plaintiff's employee, Greg Nunes, ordered 8,000 pounds of the new Jackpot variety from defendant's employee, Grant Jorgensen. In September and October, defendant delivered Jackpot seed from three different lots to plaintiff. Plaintiff then overseeded 56 acres of bluegrass sod with the Jackpot seed. Several weeks after the overseeding, plaintiff's employees noticed large, irregular clumps of off-colored ryegrass appearing in the fields. Plaintiff contacted defendant and forwarded a sample of the contaminant plants. Defendant determined the fields were infested with an annual ryegrass which rendered them unsuitable for sod production. Defendant also recommended extensive corrective actions to eliminate as much of the contaminant grass as possible. Defendant's director of research, Dr. Leah Brilman, visited the fields and then reported to defendant's president, Duane Jacklin. In a report transmitted to plaintiff, Dr. Brilman stated: "The appearance of the annual rye grass in an unmowed condition would be noticeable to the average consumer." The off-colored ryegrass clumps appeared in an incidence "of approximately one plant per square foot."

Defendant shipped the plaintiff's Jackpot order in three separate lots. Defendant delivered a 2,000-pound shipment in September 1981, a 4,000-pound shipment in October 1981, and another 2,000-pound shipment some-

time later. Plaintiff planted the first two shipments in the subject fifty-six acres and later returned the third shipment to defendant. Because Jackpot seed was still in the experimental stages, defendant had not determined a characteristic fluorescence level for the seed. Prior to shipment, MarCo Seed Testing conducted a fluorescence test on a sample from each lot. In a fluorescence test, a chemical is added to seed and then the seed is exposed to ultraviolet light. The test is designed to distinguish annual ryegrass seeds, which fluoresce, from perennial ryegrass seeds, which do not fluoresce. The MarCo tests revealed 1 percent fluorescence in the first shipment and 4.25 percent fluorescence in the second shipment. MarCo prepared a certificate of analysis for each shipment indicating the fluorescence level and the fact the seed was "0.00 other crop" and "0.00 weed." Duane Jacklin testified the "0.00" designation meant the tests showed no crop seed other than ryegrass. Defendant sent plaintiff a certificate of analysis with each shipment of seed. John Nunes, Jr., construed the certificates to mean the seed was labeled according to federal law.

Plaintiff followed defendant's corrective measures by increased mowing and weeding and reduced irrigation. However, plaintiff was unable to market the sod at the normal time, the spring of 1982. Instead, plaintiff delayed harvesting for several months to make the sod marketable. Plaintiff ultimately sold its entire inventory of sod to Pacific Sod Company and plaintiff corporation liquidated in 1984.

Prior to each shipment of Jackpot seed, defendant transmitted to plaintiff a written confirmation of sale bearing the following warranty and disclaimer: "JACKLIN SEED COMPANY, DIVISION OF THE VAUGHAN-JACKLIN CORPORATION, warrants that seed it sells conforms to the label description as required by State and Federal Seed Laws. IT MAKES NO OTHER WARRANTIES, EXPRESS OR IMPLIED, OF MERCHANTABILITY, FITNESS FOR PURPOSE, OR OTHERWISE, AND IN ANY EVENT ITS LIABILITY FOR BREACH OF ANY WARRANTY OR CONTRACT WITH RESPECT TO SUCH SEEDS IS LIMITED TO THE PURCHASE PRICE OF SUCH SEEDS. [¶] JACKLIN SEED COMPANY FURTHER LIMITS TO SUCH PURCHASE PRICE ITS LIABILITY OF ANY KIND ON ACCOUNT OF ANY NEGLIGENCE WHATSOEVER ON ITS PART WITH RESPECT TO SUCH SEEDS."

Each bag of Jackpot seed bore a label with the following warranty and disclaimer: "NOTICE TO BUYER: EXCLUSION OF WARRANTIES AND LIMITATION OF DAMAGES AND REMEDY. [¶] The labeler warrants that this seed conforms to the label description, as required by federal and state seed laws. WE MAKE NO OTHER WARRANTIES, EXPRESS OR IMPLIED, OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR

OTHERWISE, CONCERNING THE PERFORMANCE OF THIS SEED. [¶] LIABILITY for damages for any cause, including breach of contract or breach of warranty, with respect to this sale of seeds IS LIMITED TO A REFUND OF THE PURCHASE PRICE OF THE SEEDS. THIS REMEDY IS EXCLUSIVE. [¶] IN NO EVENT SHALL THE LABELER BE LIABLE FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES, INCLUDING LOSS OF PROFITS."

On January 23, 1984, plaintiff filed a complaint for breach of warranty and product liability in Stanislaus County Superior Court and prayed for approximately $175,000 in damages. On January 24, 1986, the court granted defendant's motion for summary adjudication of certain issues as without substantial controversy but denied defendant's motion for summary judgment (Code Civ. Proc., § 437c).

On January 27, 1986, plaintiff corporation filed an amended complaint in superior court alleging it assigned all of its legal claims and causes of action to John Nunes, Jr. Plaintiff prayed for relief "in an amount in excess of $15,000, in an exact amount to be proven at trial, including interest thereon." On January 27 through 29, 1986, the parties tried the bifurcated issues of breach of warranty and enforcement of disclaimers before the superior court sitting without a jury.

On May 5, 1986, the court filed a statement of decision finding (1) no mislabeling of the Jackpot ryegrass in the designation ".00 other crop"; (2) no breach of any express warranty since there was no mislabeling; (3) no breach of implied warranty of merchantability since the seed contained less than 5 percent annual rye, was of sod quality, and was in fact sold and marketable; and (4) the limitation on damages was valid because plaintiff was familiar with similar restrictions. The court also found breach of the implied warranty of fitness for a particular purpose, stating: "[T]he Plaintiff's particular purpose, that being sod production, and the need for a perennial rye grass, was specifically known and discussed with the defendant and the defendant made the recommendation that the Jackpot rye grass would fit the plaintiff's purposes, and upon that recommendation, the purchase was made. As it turned out, the product was obviously not fit for the particular purpose ordered by the plaintiff, it was still, in fact, experimental in nature. Also, it would be reasonable for the purchaser to assume that if there was going to be a problem that the seller would know of it and notify the buyer."

On May 5, 1986, the court entered judgment in favor of plaintiff but limited the recovery to the purchase price or replacement cost of the seed furnished. Plaintiff filed a timely notice of appeal from the judgment and

defendant filed a timely notice of cross-appeal from that part of the judgment granting plaintiff recovery.

## DISCUSSION

### I. DID THE TRIAL COURT'S FINDINGS OF FACT REFUTE ITS CONCLUSION THE SEEDS WERE LABELED ACCORDING TO LAW?

Code of Civil Procedure section 632 states in relevant part: "In superior . . . courts, upon the trial of a question of fact by the court, written findings of fact and conclusions of law shall not be required. The court shall issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial upon the request of any party appearing at the trial. . . . The request for a statement of decision shall specify those controverted issues as to which the party is requesting a statement of decision. After a party has requested such a statement, any party may make proposals as to the content of the statement of decision."

██ A trial court rendering a statement of decision under Code of Civil Procedure section 632 is required only to state ultimate rather than evidentiary facts. A trial court is not required to make findings with regard to detailed evidentiary facts or to make minute findings as to individual items of evidence. Only where a trial court fails to make findings as to a material issue which would fairly disclose the determination by the trial court would reversible error result. ██ Even though a court fails to make a finding on a particular matter, if the judgment is otherwise supported, the omission is harmless error unless the evidence is sufficient to sustain a finding in favor of the complaining party which would have the effect of countervailing or destroying other findings. A failure to find on an immaterial issue is not error. (*People* v. *Casa Blanca Convalescent Homes, Inc.* (1984) 159 Cal.App.3d 509, 524-525 [206 Cal.Rptr. 164, 53 A.L.R.4th 661].) ██ In issuing a statement of decision, the trial court need not address each question listed in a party's request. All that is required is an explanation of the factual and legal basis for the court's decision regarding such principal controverted issues at trial as are listed in the request. (*Miramar Hotel Corp.* v. *Frank B. Hall & Co.* (1985) 163 Cal.App.3d 1126, 1130 [210 Cal.Rptr. 114].)

In the instant case, plaintiff contends the following finding is not supported by the stated reasons: "With regards to the issue of whether or not the Jackpot Rye Grass was mislabeled when the label contained '00 other crop', the Court's decision is as follows: The Court concludes that there was no mislabeling of the Jackpot Rye Grass when the label stated '00 other crop'.

[¶] The Court based its decision on the following facts: there is no evidence of other crop [*sic*] than 5% and no evidence that the aggregate number of seed components each not more than 5%, exceed 10% of the whole. Therefore the bags were properly labeled as '00 other crop'."

California Food and Agricultural Code section 52452 states in relevant part: "Except as otherwise provided in Section 52454 [lot of several containers; label information on invoice or one container], each container of agricultural seed which is for sale or sold within this state for sowing purposes . . . shall bear upon it or have attached to it in a conspicuous place a plainly written or printed label or tag in the English language, which gives all of the following information:

"(a) Commonly accepted name of the kind, kind and variety, or kind and type of each agricultural seed component in excess of 5 percent of the whole, and the percentage by weight of each. If the aggregate of agricultural seed components, each present in an amount not exceeding 5 percent of the whole, exceeds 10 percent of the whole, each component in excess of 1 percent of the whole shall be named together with the percentage by weight of each. If more than one component is required to be named, the names of all components shall be shown in letters of the same type and size.

"(b) Lot number or other lot identification.

"(c) Percentage by weight of all weed seeds.

"(d) The name and approximate number of each kind of restricted noxious weed seed per pound.

"(e) Percentage by weight of any agricultural seed except that which is required to be named on the label.

"(f) Percentage by weight of inert matter.

". . . . . . . . . . . . . . . . . ."

The statute in question is part of the California Seed Law (Food & Agr. Code, §§ 52251-52515; see generally, Comment, *The Effect of Warranties on Seed Sales with an Eye to the U.C.C., Unconscionability and the California Agricultural Code* (1978) 11 U.C. Davis L.Rev. 335.) The Legislature enacted the California Seed Law to enable the seed industry, with the aid of the state, to ensure the product purchased by the consumer-buyer of seed is properly identified and of the quality represented on the tag or label. (Food

& Agr. Code, § 52288.) The provisions of the California Seed Law must be construed to conform as much as possible with the construction placed upon the Federal Seed Act (7 U.S.C. § 1551 et seq.) and regulations issued pursuant to that act. (Food & Agr. Code, § 52281.)

The Federal Seed Act states in relevant part: "It shall be unlawful for any person to transport or deliver for transportation in interstate commerce—

"(a) Any agricultural seeds or any mixture of agricultural seeds for seeding purposes, unless each container bears a label giving the following information in accordance with rules and regulations prescribed under section 1592 of this title:

"(1) The name of the kind or kind and variety for each agricultural seed component present in excess of 5 per centum of the whole and the percentage by weight of each . . . .

". . . . . . . . . . . . . . . . .

"(6) Percentage by weight of agricultural seeds other than those included under paragraph (a)(1) of this section . . . ." (7 U.S.C. § 1571(a).)

■ In the instant case, plaintiff contends the trial court overlooked the requirements of Food and Agricultural Code section 52452, subdivision (e), and 7 United States Code section 1571(a)(6). Plaintiff maintains: "The trial court findings appear to have been directed to the question of whether annual ryegrass had to be *named* on the labels attached to the bags of Jackpot Perennial Ryegrass sold by Jacklin to Nunes. As shown below, the Court overlooked the requirement that the percentage of annual ryegrass be disclosed on the label as 'other crop.'"

Under the California Seed Law, "agricultural seed" means the seed of any domesticated grass or cereal, and of any legume or other plant grown as turf, cover crop, forage crop, fiber crop, or field crop and mixtures of such seeds. (Food & Agr. Code, § 52254.) Under the Federal Seed Act, "agricultural seeds" means grass, forage, and field crop seeds which the Secretary of Agriculture finds are used for seeding purposes in the United States and which he lists in the rules and regulations prescribed under 7 United States Code section 1592. (7 U.S.C. § 1561(a)(7)(A).) Both state and federal regulations specifically identify annual or Italian ryegrass (*Lolium multiflorum* Lam.) and perennial ryegrass (*Lolium perenne* L.) as "agricultural seeds." (Cal. Code Regs., tit. 3, § 3899, subd. (a); 7 C.F.R. § 201.2(h) (1987).) Federal regulations further provide: "Agricultural seeds other than those

included in the percentage or percentages of kind, variety, or type may be expressed as 'crop seeds' or 'other crop seeds' but the percentage shall include collectively all kinds, varieties, or types not named upon the label." (7 C.F.R. § 201.18 (1987).)

The challenged labels were not offered in evidence in the instant case. The MarCo Seed Testing certificate for the 4,000 pound shipment stated: "0.00 (other than ryegrass)" percent crop seed. Defendant's president, Duane Jacklin, testified when a perennial ryegrass is labeled ".00 weed free, .00 other crop" it means "we have a test that shows no other crop seed other than rye grass." Defendant failed to state the percentage by weight of annual ryegrass as "other crop seeds" on the labels in the instant case. Duane Jacklin testified his company was not required to so label the seed because of a formula in the Federal Seed Act regulations. The regulation states in relevant part: "When the identification of the kind, variety, or type of seed or determination that seed is hybrid is not possible by seed characteristics, identification may be based upon the seedling, growing plant, or mature plant characteristics according to such authentic information as is available.

"(a) *Ryegrass.* In determining the proportions of perennial and annual or Italian ryegrass seed, 400 seeds shall be grown on filter paper and the number of fluorescent seedlings determined under ultraviolet light at the end of the germination period. The percentages of pure ryegrass seed, normal fluorescent seedlings, and normal nonfluorescent seedlings shall be determined. The percentage of normal fluorescent seedlings or normal nonfluorescent seedlings is the number of each found in the test divided by the total number of seeds in the test. The results shall be applied as follows:

"(1) If the quotient obtained by dividing the number of normal fluorescent seedlings by the number of normal seedlings is greater than 75 percent, the following formula shall be used:

"Percent annual or Italian ryegrass = (% fluorescent seedlings × % pure ryegrass)/% germination

"The percentage of perennial ryegrass is determined by subtracting the percentage of annual or Italian ryegrass found from the percentage of pure ryegrass.

"(2) If the quotient referred to in paragraph (a)(1) of this section is 75 percent or less, the following formula shall be used:

"Percent perennial ryegrass = (1.0526 × % nonfluorescent seedlings × % pure ryegrass)/% germination

"The percentage of annual or Italian ryegrass is determined by subtracting the percentage of perennial ryegrass found from the percentage of pure ryegrass." (7 C.F.R. § 201.58a.) According to Duane Jacklin, if the fluorescence of perennial ryegrass is 5 percent or less under the formula, then the labeler is not required to label the annual ryegrass as "other crop." Defendant computed the formula in 7 Code of Federal Regulations, section 201.58a(a)(2) (1987), on appeal and determined the percentage of annual ryegrass was "a negative .12% total." Defendant submits: "The seed in question in this case was a Jackpot perennial rye grass seed. The alleged contaminant seed, according to Appellant, was a different, annual rye grass seed. While there may have been some annual rye seed in the shipment to Nunes, as this case illustrates, technical compliance with the Federal seed testing and labeling requirements does not guarantee pure perennial rye grass seed. In other words, the label in question is not to mean *no* annual ryegrass seed, it means no annual ryegrass seed *according to law*. The seed here did comply with testing and labeling requirements—possibly it may not have been pure perennial rye grass."

In our view, defendant's argument regarding the formula test for ryegrass as set forth in 7 Code of Federal Regulations, section 201.58a(a)(2) (1987), is a red herring. We first note the trial court in its statement of decision made no reference to and apparently did not consider Jacklin's testimony in this regard in reaching its decision. We also note that defendant's testing agent, MarCo Seed Testing (MarCo), did not and properly should not, according to Jacklin, have used this test because the percentage of fluorescence is less than 5 percent. Finally, we further note, according to Jacklin, this test is used only to calculate "other crop" content as opposed to ryegrass. In light of Jacklin's testimony, it is understandable why the trial court did not make a finding in this regard in its statement of decision.

Defendant also argues "Appellant has mistakenly applied California seed labeling laws where Federal seed labeling laws and regulations should be applied." In other words, defendant contends federal seed labeling laws, 7 United States Code section 1551 et seq., exclusively control here. Plaintiff counters that "The warranty makes no reference whatsoever to federal regulations or tolerance levels. . . . In fact, the phrase actually used 'as required by Federal and State seed laws,' indicates precisely the opposite— that federal and state law require actual conformity of the seed to its label description." (Fn. omitted.) The trial court in its statement of decision, prepared by defendant's trial counsel, did not refer to or in any way distin-

guish between federal and California seed labeling requirements in its findings and conclusions. Actually, it would appear the trial court focused on California Food and Agricultural Code section 52452, subdivision (a) in reaching its conclusion the bags of seed were properly labeled "00 other crop." In our view, it does not matter which of the two sections, federal versus California, controls here. We will find, based upon the trial court's findings, that defendant's labels failed to comply with the provisions of *both* the federal *and* California seed labeling requirements and the trial court erred in this regard. However, for reasons to be stated in part III of this opinion, we will further find the judgment below must be affirmed.

In its statement of decision, the trial court stated: "2. With regards to the issue of whether or not the Jackpot Rye Grass was mislabeled when the label contained '00 other crop[,'] the Court's decision is as follows: The Court concludes that there was no mislabeling of the Jackpot Rye Grass when the label stated '00 other crop[.']

"The Court based its decision on the following facts: there is no evidence of other crop [*sic*] than 5% and no evidence that the aggregate number of seed components each not more than 5%, exceed 10% of the whole. Therefore the bags were properly labeled as '00 other crop[.']

"3. With regards to the issue of whether or not there was a breach of any express warranty, the Court's decision is as follows: the Court concludes that there was no breach of any express warranty.

"The Court based its decision on the following facts: the Court concluded that there was no mislabeling of the Jackpot Rye Grass Seed when the label contained '00 other crop[.'] There is no evidence of other crop [*sic*] than 5% and no evidence that the aggregate number of seed components each not more than 5%, exceeded 10% of the whole. Therefore the bags were properly labeled at '00 other crop[,'] therefore there was no mislabeling and therefore no breach of any express warranty."

The essentially uncontradicted evidence at trial reflects that the MarCo tests of defendant's Jackpot perennial seed revealed 1 percent annual ryegrass in defendant's first shipment of seed to plaintiff and 4.25 percent in the second shipment. Dr. Leah Brilman, defendant's research director, inspected the fields planted by plaintiff with defendant's Jackpot seed and concluded that the fields were contaminated with an annual ryegrass, and Jacklin concurred with her conclusion. The trial court, elsewhere in its statement of decision, found: "1. The annual rye grass of which plaintiff complains was

contained in the shipment of Jackpot Perennial Rye Grass from the Defendant, JACKLIN SEED COMPANY.

"..............................

"... [T]he bags of Jackpot Perennial Rye Grass seed had less than 5% annual rye grass. . . .

"..............................

"... [A]s it turned out, the product was obviously not fit for the particular purpose ordered by the plaintiff. . . ."

Thus, it is apparent the trial court found defendant's Jackpot perennial seed contained measurable quantities of annual ryegrass and this conclusion is supported by substantial evidence. However, the trial court further concluded, in interpreting 7 United States Code section 1571(a) and/or California Food and Agricultural Code section 52452, that unless the annual ryegrass content in defendant's Jackpot perennial seed, itself, measured in excess of 5 percent, or alternatively, if the annual ryegrass content, itself, measured less than 5 percent and in combination with other nonperennial ryegrass seeds measured less than a total of 10 percent of the whole, then defendant properly labeled its bags as "00 other crop." In reaching this conclusion, the trial court ignored Food and Agricultural Code section 52452, subdivision (e), which requires disclosure on the label "[p]ercentage by weight of any agricultural seed except that which is required to be named on the label" and 7 United States Code section 1571(a)(6) which requires disclosure on the label "Percentage by weight of agricultural seeds other than those included under paragraph (a)(1) of this section . . . ."

The distinction between Food and Agricultural Code sections 52452, subdivision (a), and 52452, subdivision (e), and between 7 United States Code sections 1571(a)(1) and 1571(a)(6) is the requirement of *naming* the seed component in the first instance as opposed to *reflecting by weight* (although not naming) the seed component in the latter. This conclusion is apparent from a mere reading of the two relevant sections in their entirety. It would appear the trial court focused on those provisions of each section which required the *naming* of seed components on defendant's label. The court concluded that because of the percentage by weight of annual ryegrass in each subject lot, defendant was not required to designate by *name* the percentage by weight of annual ryegrass contained therein or, as the trial court put it, could properly label the bags "00 percent other crop" by applying the provisions of Food and Agricultural Code section 52452, sub-

division (a), and 7 United States Code section 1571(a)(1) to the facts before it. However, this conclusion ignores the requirements of Food and Agricultural Code section 52452, subdivision (e), and 7 United States Code section 1571(a)(6) respectively, as above explained. To adopt the trial court's reasoning would render Food and Agricultural Code section 52452, subdivision (e), and 7 United States Code section 1571(a)(6) each a nullity or mere surplusage and meaningless which, of course, is contrary to all reason and logic. Thus, we must conclude the trial court erroneously ruled, based on the evidence and its own findings, that defendant's Jackpot perennial ryegrass was properly labeled ".00 other crop."

### II. DID THE TRIAL COURT'S FINDINGS OF FACT REFUTE THE CONCLUSION DEFENDANT BREACHED NO EXPRESS WARRANTY?

█ Plaintiff contends the trial court erroneously held defendant did not breach any express warranty to Nunes.

The trial court held in its statement of decision: "With regards to the issue of whether or not there was a breach of any express warranty, the Court's decision is as follows: the Court concludes that there was no breach of any express warranty.

"The Court based its decision on the following facts: the Court concluded that there was no mislabeling of the Jackpot Rye Grass Seed when the label contained '00 other crop'. There is no evidence of other crop [*sic*] than 5% and no evidence that the aggregate number of seed components each not more than 5%, exceeded 10% of the whole. Therefore the bags were properly labeled at '00 other crop', therefore there was no mislabeling and therefore no breach of any express warranty." As noted above, defendant expressly warranted the Jackpot perennial ryegrass seed conformed to the label description as required by state and federal laws. However, defendant failed to list the percentage by weight of annual ryegrass seed in the Jackpot perennial ryegrass, as required by state and federal law. (Food & Agr. Code, § 52452, subd. (e); 7 U.S.C. § 1571(a)(6).) Thus, defendant breached its express warranty to plaintiff and the trial court erroneously found to the contrary.

### III. IS PLAINTIFF ENTITLED TO CONSEQUENTIAL DAMAGES FOR DEFENDANT'S BREACH OF EXPRESS WARRANTY AND BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE?

█ Plaintiff contends he is entitled to consequential damages for breach of warranty in light of the trial court's erroneous conclusion regarding the labeling of seed.

Defendant's sales confirmations bore the following disclaimer: "JACKLIN SEED COMPANY, DIVISION OF THE VAUGHAN-JACKLIN CORPORATION, warrants that seed it sells conforms to the label description as required by State and Federal Seed Laws. IT MAKES NO OTHER WARRANTIES, EXPRESS OR IMPLIED, OF MERCHANTABILITY, FITNESS FOR PURPOSE, OR OTHERWISE, AND IN ANY EVENT ITS LIABILITY FOR BREACH OF ANY WARRANTY OR CONTRACT WITH RESPECT TO SUCH SEEDS IS LIMITED TO THE PURCHASE PRICE OF SUCH SEEDS. [¶] JACKLIN SEED COMPANY FURTHER LIMITS TO SUCH PURCHASE PRICE ITS LIABILITY OF ANY KIND ON ACCOUNT OF ANY NEGLIGENCE WHATSOEVER ON ITS PART WITH RESPECT TO SUCH SEEDS."[1]

The trial court held in its statement of decision the contractual limitation of liability was valid because "the plaintiff was familiar with and read and understood, and even had similar restrictions on its products. Certainly it was a part of the agreement between the parties, the Plaintiff knew the Defendant would not sell the seed at this price withhout [sic] all the limitations and . . . the limitation under all of the circumstances is not unconscionable in this case."

The custom of nonwarranty or limiting the buyer's recovery to the purchase price of the seed has prevailed in the seed industry for many years. (See Hoover v. Utah Nursery Co. (1932) 79 Utah 12 [7 P.2d 270, 272]; Miller v. Germain Seed etc. Co. (1924) 193 Cal. 62, 72-73 [222 P. 817, 32 A.L.R. 1215]; Herrera v. Johnston Seed etc. (1956) 140 Cal.App.2d 822, 825 [295 P.2d 963]; Comment, The Effect of Warranties on Seed Sales with an Eye to the U.C.C., Unconscionability and the California Agricultural Code, supra, 11 U.C. Davis L.Rev. 335, fn. 3.)

"Seed sales are unique because seed is a unique chattel. A buyer purchases seed for what the seed, after many hours of planting and cultivating, will produce. Defective seed is not easy to identify and therefore the buyer will not readily discover any existing latent defects in the seed. The effect of the limited liability clause on the farmer's recovery for breach of warranty only becomes clear after the farmer discovers the defect and the crop has failed." (Id. at p. 336, fn. omitted.)

Civil Code section 1668 states: "All contracts which have for their object, directly or indirectly, to exempt anyone from the responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law."

---

[1] The disclaimers on defendant's labels and invoices were phrased differently than the disclaimer on the sales confirmation.

Traditionally, the law has looked carefully and with some skepticism at those who attempt to contract away their legal liability for the commission of torts. This general policy of the common law found legislative expression early in California history with the enactment of Civil Code section 1668. This section made it clear a party could not contract away liability for his fraudulent or intentional acts or for his negligent violations of statutory law. ■ However, a contract exempting from liability for ordinary negligence is valid where no public interest is involved and where no statute expressly prohibits it. (*Gardner* v. *Downtown Porsche Audi* (1986) 180 Cal.App.3d 713, 716-717 [225 Cal.Rptr. 757].)

■ Defendant acknowledges on appeal: "Respondent is aware of the provisions of California Civil Code § 1668, which states that any contract which seeks to exempt from liability for a violation of law is unenforceable. This Code Section might apply if there had been a mislabeling of the Jackpot Ryegrass Seed in question. However, as discussed above there was no mislabeling. Thus, Civil Code § 1668, relied on exclusively by Appellant in their argument for consequential damages, is not applicable to this case. The express limitation is instead valid and binding as the sole agreement as to the damages between the parties." The initial premise of defendant's argument is erroneous. In issue I, above, we concluded the defendant mislabeled the Jackpot perennial ryegrass seed by failing to indicate the percentage by weight of other agricultural seeds. Defendant nevertheless contends the express disclaimer must be enforced unless plaintiff proves it unconscionable. California Uniform Commercial Code section 2719, subdivision (3) states: "Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is invalid unless it is proved that the limitation is not unconscionable. Limitation of consequential damages where the loss is commercial is valid unless it is proved that the limitation is unconscionable."

The California Uniform Commercial Code does not attempt to precisely define what is or is not "unconscionable." ■ Nevertheless, unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party. Unconscionability has both a "procedural" and a "substantive" element. The procedural element focuses on two factors: "oppression" and "surprise." "Oppression" arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice. "Surprise" involves the extent to which the terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms. No precise definition of substantive

unconscionability has been articulated. Cases have talked in terms of "overly harsh" or "one-sided" results. (*A & M Produce Co.* v. *FMC Corp.* (1982) 135 Cal.App.3d 473, 485-487 [186 Cal.Rptr. 114, 38 A.L.R.4th 1].)

■ Plaintiff contends the only two appellate courts to consider the effect of seed label disclaimers have found such clauses to be unenforceable as against public policy. In *Klein* v. *Asgrow Seed Co.* (1966) 246 Cal.App.2d 87 [54 Cal.Rptr. 60], defendant manufacturer produced VF-36 tomato seed for commercial sale. That variety was an early-maturing, heavy-producing cannery tomato. After a series of resales to intermediate suppliers, plaintiffs purchased 35 pounds of the seed. Sometime after the sales, defendant's plant breeder determined the lot was not true to type but contained an unknown percentage of "rogues" or off-grade seed. Defendant packaged the seed and placed it in the channels of commerce without warning of the presence of "rogues." The cans of seed bore the following warranty and disclaimer in small print: "Asgrow warrants that the seed, bulbs and plants it sells will be, at the time of delivery, as described on the container within recognized tolerances. Asgrow gives no other or further warranty, expressed or implied . . . ." In 1962, plaintiffs sowed three fields with the VF-36 seed. They were unable to promptly harvest the crop because immature rogue plants were predominantly scattered throughout the field. Plaintiffs recovered over $14,000 for breach of warranty in the sale of tomato seed and the Third District Court of Appeal affirmed the judgments against Asgrow and the intermediate suppliers.

The Third District held disclaimers are to be strictly construed against the seller and presumed (1) the sellers knew VF-36 was an early-maturing, high-bearing cannery variety of tomato; (2) all brokers and merchants knew crop maturity was vital to the grower's profit; and (3) the sellers must have known the effect of substantial late-maturing rogues in a supposed 100 percent VF-36 field. Defendant placed the seed on the market warranting it to be VF-36 when it knew it was an intermixture of VF-36 and rogues. Defendant's plant breeder testified his company bore the risk when it deviated from its policy of marketing pedigreed stocks. That testimony justified the trial court's finding there was no custom under which the defendant manufacturer disclaimed liability.

Further, the Third District held any such agreement to disclaim liability would have violated the policy of Civil Code section 1668 and former Agricultural Code section 914 (now Food & Agr. Code, § 52482). The latter section prohibits the shipment, delivery, transport, or sale of any agricultural seed with false or misleading labeling or which was the subject of a false or misleading advertisement. The express warranty the seed was

VF-36 when it was in fact mixed and Asgrow's knowledge of falsity of that statement created the liability. Civil Code section 1668 made the statement of limitation of liability void as against public policy.

Finally, Asgrow urged the then newly adopted California Uniform Commercial Code negated liability in a seed manufacturer under the facts of the case. Although the California Uniform Commercial Code was inapplicable to the VF-36 sales, the court noted the code did not curtail any liability imposed by the predecessor Uniform Sales Act upon sellers for breaches of warranty. Further, the California Uniform Commercial Code did not extend the power of sellers to disclaim or limit liability for such breaches. In addition, the code neither expressly nor impliedly repealed Civil Code section 1668. Asgrow was liable for placing seed described as VF-36 on the market knowing it to be a mixed variety, intending that it ultimately reach some tomato growers like plaintiffs and intending them to be "test-mice" in ascertaining how many "rogues" were present.

In *Agr. Services Ass'n, Inc.* v. *Ferry-Morse Seed Co.* (6th Cir. 1977) 551 F.2d 1057, defendant Ferry-Morse (F-M), a California corporation, purchased 25,000 pounds of Clemson Spineless (C/S) okra seed from defendant Waldo Rohnert Company (W-R), a California corporation. In 1967 F-M sold the okra seed to plaintiff (ASA), a Tennessee cooperative. W-R's seed bags bore the following notice: "We warrant that seeds sold have been labeled as required under state and federal seed laws and that they conform to label description." The seed purchased by ASA was defective and it produced only about one-half of the normal okra plant, a substantial reduction from previous years. The low yield caused ASA and its growers to fail to meet their contractual obligations. ASA sued defendants for damages and the district court awarded plaintiffs the purchase price of the defective seed and over $75,000 in damages. The Court of Appeals affirmed the judgment except for the inclusion of $25,000 in damages for lost good will, which was not proven. The court reversed as to F-M's denial of indemnity and breach of express warranty claims against W-R.

The court initially held the law of California applicable to the F-M/W-R contract and the law of Tennessee applicable as to the rights of ASA against both F-M and W-R. The seed was not C/S okra seed but was an off variety. Clearly W-R breached its express warranty to F-M that the seed was C/S okra seed. F-M relied on the label in repackaging the seeds and selling them to ASA. The language on the tags undertook to limit W-R's liability for breaches of warranties to the purchase price of the seed. Nevertheless, Civil Code section 1668 prohibits contracts or agreements which exempt a party from the responsibility of the consequences of one's negligent violation of

the law as against public policy or from one's fraud. The California Uniform Commercial Code has not diminished the force of Civil Code section 1668. W-R's erroneous labeling of the seed bags as C/S okra violated the California Seed Law. The Court of Appeals concluded W-R could not use tags under California law to limit its liability for its own failure to properly label the purchased items. The court held it was manifestly unfair to limit F-M's recovery from W-R to the purchase price where the errors were caused solely by W-R.

In the instant case, defendant avoids any detailed discussion of the foregoing cases. Instead, it contends (1) the express disclaimer was valid as the sole remedy between the parties; (2) no violation of law occurred which might invalidate the express disclaimer; (3) the express disclaimer must be enforced unless plaintiff proves it unconscionable; (4) plaintiff failed to prove the disclaimer procedurally and substantively unconscionable; and (5) even assuming arguendo a violation of the Federal Seed Act regulations, application of Civil Code section 1668 is not warranted and the express disclaimer is valid. Defendant relies on *Delta Air Lines, Inc.* v. *McDonnell Douglas Corporation.* (5th Cir. 1974) 503 F.2d 239, certiorari denied 421 U.S. 965 [44 L.Ed.2d 451, 95 S.Ct. 1953], in support of its contentions. In *Delta,* plaintiff airline purchased an aircraft from defendant manufacturer. The craft suffered damages during a landing because a component was incorrectly installed. Delta sought to recover the expenses incurred in repair on four theories of liability: (1) negligence; (2) breach of implied warranties of merchantability and fitness for a particular purpose; (3) breach of express warranty; and (4) strict liability. The district court dismissed the negligence and strict liability counts on the ground an exculpatory clause in the contract limited defendant's liability to contractual warranty provisions. The Fifth Circuit Court of Appeals affirmed, holding California law to be controlling.

Delta argued the exculpatory clause clearly violated the public policy of California as set forth in Civil Code section 1668. Plaintiff asserted the defendant violated a Federal Aviation Administration (FAA) regulation (14 C.F.R. § 21.165 (1974)) by delivering the plane with the nose gear component incorrectly installed. The court held Delta was confusing a negligence theory of action, under which violation of a law or a regulation may be evidence of negligence, with the liability that may be imposed by law. Defendant may have been answerable to the FAA and third parties for any responsibility established by the regulation. However, such a cause of action is not involved in an action based on common law negligence. After discussion of a factually analogous case (*Delta Air Lines, Inc.* v. *Douglas Aircraft Co., Inc.* (1965) 238 Cal.App.2d 95 [47 Cal.Rptr. 518]), the court conclud-

ed: "We are unable to agree that the contract between two industrial giants fixing the dollar responsibility for McDonnell's alleged negligence would be void under California law, any more than would be an insurance contract which might be written for the same purpose." (*Id.* at p. 244.)

Here, defendant contends commercial entities are entitled to contract to limit the liability of one to the other, or otherwise allocate the risk of doing business. (*Philippine Airlines, Inc.* v. *McDonnell Douglas Corp.* (1987) 189 Cal.App.3d 234, 237-238 [234 Cal.Rptr. 423].) ■ However, contractual clauses seeking to limit liability will be strictly construed and any ambiguities resolved against the party seeking to limit its liability for negligence. (*Ibid.*) The plaintiff observes: "Whether *Delta Airlines* is good authority or not, it is plainly distinguishable from the present case. Here, Jacklin expressly warranted conformity with federal and state seed laws and Nunes was injured as a direct result of Jacklin's failure to live up to its warranty. In addition, the violation claimed here is not of a federal regulation but of provisions of federal and state statutory law including 7 U.S.C. Section 1571, and California Food and Agriculture [*sic*] Code Sections 52452 and 52482(c). While California authorities have been divided as to the application of Section 1668 to negligent violations of *common law* standards of care, it is well settled that the section prohibits a party from limiting its liability for negligent violations of *statutory* law. (*Gardner* v. *Downtown Porsche Audi* (1986) 180 Cal.App.3d 713, 716 [225 Cal.Rptr. 757] . . . .) This is precisely what respondent here is attempting to do."

■ Pursuant to Civil Code section 1668, a party cannot contract away liability for fraudulent or intentional acts or for negligent violations of statutory law. (*Gardner* v. *Downtown Porsche Audi, supra,* 180 Cal.App.3d 713, 716.) ■ Defendant's disclaimer stated in relevant part: "JACKLIN SEED COMPANY FURTHER LIMITS TO SUCH PURCHASE PRICE ITS LIABILITY *OF ANY KIND ON ACCOUNT OF ANY NEGLIGENCE WHATSOEVER* ON ITS PART WITH RESPECT TO SUCH SEEDS." (Italics added.) Although the disclaimer appears to violate section 1668, defendant contends the limitation on consequential damages was "conscionable" pursuant to California Uniform Commercial Code section 2719, subdivision (3) because plaintiff "knowingly and expressly accepted the risk of loss—as was done throughout the course of dealings between itself and Respondent— and thus expressly agreed that the above limitation would be [appellant's] sole remedy." Defendant further contends "the parties to this transaction are large companies—allegedly two of the largest in their respective businesses. These large companies chose *deliberately* to allocate the risk of loss *and* this was a *material basis* of their bargain."

The California Uniform Commercial Code expressly allows the limitation or exclusion of consequential damages for commercial loss unless the limitation or exclusion is unconscionable. (Cal. U. Com. Code, § 2719, subd. (3).) In addition, the California Uniform Commercial Code discussion in *Klein* is dicta and the decision of the United States Fifth Circuit Court of Appeals in *Ferry-Morse* is not controlling on matters of state law. (*Estate of D'India* (1976) 63 Cal.App.3d 942, 947-948 [134 Cal.Rptr. 165].) ■■ It is also settled law that when a special and a general statute are in conflict, the former controls. (Code Civ. Proc., § 1859.) The special act will be considered as an exception to the general statute whether it was passed before or after such general enactment. (*People* v. *Gilbert* (1969) 1 Cal.3d 475, 479-480 [82 Cal.Rptr. 724, 462 P.2d 580]; *Agricultural Labor Relations Bd.* v. *Superior Court* (1976) 16 Cal.3d 392, 420 [128 Cal.Rptr. 183, 546 P.2d 687].) ■■ ■■ We are concerned here with a commercial history between the parties extending over almost 20 years. The trial court concluded California Uniform Commercial Code section 2719, subdivision (3), controlled the measure of damages issue between the parties. For the reasons above stated, we must agree. The trial court stated in its statement of decision: "6. With regard to the issue of whether the contractual limitation of liability was valid, the Court's decision is as follows: the damage limitation was valid.

"The Court based its decision on the following facts: the plaintiff was familiar with and read and understood, and even had similar restrictions on its products. Certainly it was a part of the agreement between the parties, the Plaintiff knew the Defendant would not sell the seed at this price withhout [*sic*] all the limitations and the Court finds that the limitation under all of the circumstances is not unconscionable in this case.

"The Court's judgment is that the plaintiff may recover from the Defendant, but the recovery is limited to the purchase price or replacement cost of the seeds furnished to the plaintiff . . . ." ■■ The determination of whether the limitation or exclusion of consequential damages for commercial loss is unconscionable, or not, in a particular case is a factual issue for the trier of fact, here, the trial court. ■■ Upon the evidence presented, the trial court concluded the limitation of damages "is not unconscionable in this case." Upon a review of the entire record before us, and viewing the evidence in the light most favorable to the prevailing party, we conclude there is substantial evidence to support the trial court's judgment in this regard.

### IV.*

. . . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed. Each party to bear its own costs on appeal.

Hamlin, J., and Stone (W. A.), J., concurred.

A petition for a rehearing was denied June 6, 1988.

---

\* See footnote, *ante,* page 1518.