Filed 4/1/22  Roesler v. Nella Terra Cellars CA1/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| VEENA ROESLER et al.,<br><br>    Plaintiffs and Respondents,<br><br>v.<br><br>NELLA TERRA CELLARS, INC. et al.,<br><br>    Defendants and Appellants. | A160574<br><br>(Alameda County<br> Super. Ct. No. RG 17846053)<br><br>**ORDER MODIFYING OPINION AND DENYING REQUEST FOR JUDICIAL NOTICE AND PETITION FOR REHEARING**<br><br>**[NO CHANGE IN JUDGMENT]** |

**THE COURT:**

It is ordered that the unpublished opinion filed on March 11, 2022, be modified as follows:

On page 4, delete the last sentence in the first full paragraph that states:  "Until that time, plaintiffs did not have either a catering permit or a license to serve distilled spirits."

1

There is no change in the judgment.

Respondents' petition for rehearing is denied.


Dated: _____                               ___Tucher_____, P. J.

A160574

2

Filed 3/11/22  Roesler v. Nella Terra Cellars CA1/3 (unmodified opinion)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| VEENA ROESLER et al.,<br><br>        Plaintiffs and Respondents,<br><br>v.<br><br>NELLA TERRA CELLARS, INC. et al.,<br><br>        Defendants and Appellants. | A160574<br><br>(Alameda County Super. Ct. No. RG 17846053) |

Veena Roesler, individually and doing business as Palmdale Estates Inc. (collectively, plaintiffs), filed a complaint against defendants Nella Terra Cellars, Inc. (Nella Terra) and Gerald and Paulette Beemiller arising out of their business relationship.  They alleged defendants reneged on their promise to execute a long-term contract leasing plaintiffs their vineyard to operate an event venue.  The trial court ultimately determined plaintiffs invested in that venture and awarded them two years of anticipated lost profits and depreciable assets as a matter of equity.  Defendants appeal, arguing the statement of decision omits the specific equitable basis for awarding damages and fails to explain whether the award is limited to plaintiffs' anticipated lost profits for events that comply with Department of

1

Alcoholic Beverage Control (ABC) regulations.[1]  We affirm in part, reverse in part, and remand for the trial court to issue a new statement of decision and enter a new judgment.

## BACKGROUND

Plaintiffs operate a wedding and events business.  In 2013, Roesler and the Beemillers discussed creating and operating an events venue at Nella Terra, the Beemillers' vineyard, which was largely undeveloped at the time.  The parties drafted a contract providing plaintiffs with an exclusive lease to Nella Terra from January 1, 2014 to December 31, 2025, for $15,000 per month for the first two years.  After that time, all future payments would be dependent on event bookings, but plaintiffs guaranteed defendants $360,000, representing the first two years of facility fees.  Nella Terra would be the exclusive wine supplier for plaintiffs' events.  Nella Terra and the Beemillers would receive all of the events' facility fees and proceeds from wine sales.  Plaintiffs were entitled to all catering, service, decorations, and other miscellaneous rental item fees.  At the end of the lease in 2025, plaintiffs had

---

[1] We reject plaintiffs' request for judicial notice of an amended judgment entered against Nella Terra and the Beemillers, not simply the Beemillers as noted in the original judgment.  The amended judgment is of no substantial consequence to the issue before us — challenges to the statement of decision.  (Evid. Code, § 459, subd. (c); *People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 422, fn. 2 ["any matter to be judicially noticed must be relevant to a material issue"].)  Moreover, both Nella Terra and the Beemillers appealed from the original judgment.  We have no indication defendants have filed a notice of appeal of the amended judgment.

We also reject defendants' request to dismiss Nella Terra as a party, a request made in a footnote in their opening brief rather than a served and filed written motion.  (Cal. Rules of Court, rule 8.54 ["a party wanting to make a motion in a reviewing court must serve and file a written motion"]; *ReadyLink Healthcare, Inc. v. Jones* (2012) 210 Cal.App.4th 1166, 1174 [declining to treat request for a stay presented in middle of reply brief as a formal motion].)

2

the option to extend the lease for five years or to be bought out by one of the Beemillers' children.

Plaintiffs started to develop an event venue at Nella Terra and paid defendants $15,000 for January 2014 rent even though the parties had not signed the contract. Roesler also loaned the Beemillers, who had limited monetary funds, nearly $100,000 to pay for, among other things, improvements to Nella Terra's roads. In addition, plaintiffs purchased items for hosting events, such as a mobile kitchen, bathroom, dance floor, garden furniture, trucks for transporting dishes for washing, and catering and dining items, totaling over $450,000. Plaintiffs advertised Nella Terra to their clients. Meanwhile, using plaintiffs' monthly $15,000 payments, defendants worked on improving Nella Terra and its vineyard. By May 2014, plaintiffs hosted their first of 22 events at Nella Terra that year. In 2015, Roesler purchased a vacant property and building adjacent to Nella Terra, in part to serve as a dishwashing site since Nella Terra did not have any plumbing. Plaintiffs continued to pay defendants $15,000 in monthly rent for two years, for a sum of $360,000. During this time, Nella Terra became more profitable — its 2015 profits were approximately $300,000, and in 2016, $459,000.

The parties continued to negotiate contract details but were unable to finalize an agreement. In June 2014, the Beemillers revised the draft contract to give themselves an option to buy plaintiffs out within five years of operating — a proposal Roesler rejected. In August 2015, Gerald Beemiller proclaimed he was unconcerned the parties had not signed the ten-year agreement. Wanting to improve Nella Terra's cash flow, he offered plaintiffs a catering contract if they wanted to remain on the property. Under that arrangement, plaintiffs, who were not caterers, would only receive profits from catering food at events, while the Beemillers would retain the revenue

3

from the more lucrative event planning items, such as decorations and coordination fees. This would result in plaintiffs losing $6,500 per event.

The parties continued to work on negotiating a workable relationship but, in March 2016, Roesler terminated their partnership effective December 31, 2017, so the parties could complete the already-booked 2017 events. Shortly after this announcement, the Beemillers began to question plaintiffs' compliance with ABC regulations, which capped at 24 the number of events per year at which distilled spirits could be served.[2] A few months later, the Beemillers notified plaintiffs that the parties' exclusive relationship might violate ABC's tied-house restrictions[3] — regulations preventing a wholesaler from being "tied" to an exclusive arrangement to sell its wine through an events retailer. In 2017, plaintiffs began offering other wines to clients to comply with those restrictions. In March 2017, they also obtained a license authorizing the sale of distilled spirits. Until that time, plaintiffs did not have either a catering permit or a license to serve distilled spirits.

In January 2017, plaintiffs sued defendants for, among other things, breach of oral contract and promissory estoppel. Plaintiffs alleged they conferred defendants with a benefit — developing Nella Terra as a wedding

---

[2] Catering permits authorize the sale of alcoholic beverages at one specific premise for at most 24 events in one calendar year "except when [ABC] determines additional events may be catered to satisfy substantial public demand." (Cal. Code Regs., tit. 4, § 60.5, subd. (4); see also Bus. & Prof. Code, § 23399 [describing caterer's permit to sell beer, wine, and distilled spirits], undesignated statutory references are to the Business and Professions Code.)

[3] Winegrowers are prohibited from "[f]urnish[ing], giv[ing], or lend[ing] any money or other thing of value, directly or indirectly, to, or guarantee[ing] the repayment of any loan or the fulfillment of any financial obligation of, any person engaged in operating, owning, or maintaining any on-sale premises where alcoholic beverages are sold for consumption on the premises." (§ 25500, subd. (a)(2).)

venue — but without a long-term contract, they lost opportunities to recoup their initial investments. At a bench trial, plaintiffs' expert derived their projected gross income for 2017, estimating plaintiffs would hold 70 events per year, each securing $20,900 in revenue. Using that metric, he testified plaintiffs' net loss from the severed relationship over 12.3 years, the remaining 7.3 years on the proposed lease and the five-year option period, was $1,417,534 after mitigating damages. After the trial, plaintiffs amended their complaint to conform to proof, adding an unjust enrichment claim. In a posttrial brief, defendants conceded plaintiffs were entitled to $55,917 in depreciable assets but disputed the lost profits, arguing plaintiffs violated various ABC regulations throughout the parties' working relationship.

The trial court's tentative decision concluded plaintiffs were entitled to damages based on promissory estoppel and unjust enrichment. It awarded plaintiffs $555,917 — plaintiffs' posttrial request for two years of lost profits estimated at $500,000 and $55,917, the defendants' estimate of plaintiffs' start-up costs. It also concluded the ABC violations was not "a deterrent to a substantial damages award." The court noted both parties benefitted from this noncompliance.

Defendants requested a statement of decision that provided the legal and factual basis for the court's damages calculation and explained whether the ABC violations affected the damages award. It reiterated these issues in their objections to plaintiffs' proposed statement of decision. Instead of addressing these requests, the statement of decision reiterated plaintiffs were entitled to equitable relief, rejected the ABC compliance defenses, and "acceded to Plaintiff's request to limit the lost profits to $250,000 per year and then adopted Defendants' depreciable asset analysis from page 1 of their post-trial brief."

5

I.

Defendants contend the statement of decision is insufficient as a matter of law because it does not identify the specific equitable bases for granting plaintiffs relief, and it fails to clearly articulate the amount of damages awarded. These deficiencies, they argue, require reversal and remand for the issuance of a new statement of decision. We disagree.

Questions of law regarding a judgment based on a statement of decision following a bench trial are reviewed de novo, while the trial court's factual findings are reviewed for substantial evidence. (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981.) If requested, a trial court must issue a statement of decision explaining the legal and factual bases for its decision on each principal controverted issue at trial. (Code Civ. Proc., § 632; *In re Marriage of Hoffmeister* (1987) 191 Cal.App.3d 351, 358–359.) If there is a timely objection to a proposed statement of decision, a court's failure to make necessary factual findings to resolve disputed material issues renders the statement of decision inadequate as a matter of law. (*In re Marriage of Hardin* (1995) 38 Cal.App.4th 448, 453.) And "[e]ven though a court fails to make a finding on a particular matter, if the judgment is otherwise supported, the omission is harmless error unless the evidence is sufficient to sustain a finding in favor of the complaining party." (*Nunes Turfgrass, Inc. v. Vaughan-Jacklin Seed Co.* (1988) 200 Cal.App.3d 1518, 1525 (*Nunes*).)

We acknowledge the statement of decision simply notes there are "equitable bases for [the] decision" rather than identifying a particular theory for awarding equitable relief. But that omission does not warrant reversal — on this point, the judgment is otherwise supported. (*Nunes, supra*, 200 Cal.App.3d at p. 1525.) We can reasonably infer the statement of

6

decision's "equitable bases for [the] decision" refers to unjust enrichment and promissory estoppel — the equitable remedies identified in plaintiffs' amended complaint and upon which the tentative decision expressly relies for granting relief. (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 269 [appellate courts may examine tentative decisions to interpret the trial court's findings or conclusions].) Indeed, defendants concede the statement of decision awarded relief based on unjust enrichment.

The evidence supports granting plaintiffs relief under either theory. Under promissory estoppel, "a promisor is bound when he should reasonably expect a substantial change of position, either by act or forbearance, in reliance on his promise, if injustice can be avoided only by its enforcement." (*Youngman v. Nevada Irrigation Dist.* (1969) 70 Cal.2d 240, 249.) Here, plaintiffs relied on defendants' promise of providing them with an exclusive right to host events at Nella Terra for at least twelve years. The grounds at Nella Terra were largely undeveloped — mostly dirt with a long ravine — when the parties began creating an event venue in 2013. Despite the lack of a contract, plaintiffs worked with defendants, loaned the Beemillers approximately $100,000, purchased event equipment totaling over $450,000, and funded defendants' improvements to Nella Terra's grounds with their monthly $15,000 payments. Plaintiffs advertised Nella Terra to potential clients even when it initially lacked any infrastructure to host events, resulting in the hosting of 22 events in 2014. Gerald Beemiller ultimately refused to sign the draft agreement under which the parties were operating — after the parties had established a profitable events venue — and instead he offered plaintiffs a catering contract that reduced their revenue to remain on the property. As a matter of equity, promissory estoppel authorizes

7

relief for plaintiffs. (See, e.g., *Signal Hill Aviation Co. v. Stroppe* (1979) 96 Cal.App.3d 627, 632–633 [awarding plaintiff lost profits under doctrine of promissory estoppel].)

Similarly, unjust enrichment describes circumstances where there is no enforceable contract, but plaintiffs nonetheless conferred a benefit on defendants that they "knowingly accepted under circumstances that make it inequitable for the defendant to retain the benefit without paying for its value."[4] (*Hernandez v. Lopez* (2009) 180 Cal.App.4th 932, 938.) Plaintiffs immediately made monetary investments and purchases, including property adjacent to Nella Terra to support its events. Within the next year, Nella Terra became more profitable. Defendants thus knowingly benefitted from plaintiffs' monetary investments and professional experience in developing a successful events venue at Nella Terra. Under these circumstances, it would be inequitable for defendants to retain their benefit — plaintiffs are entitled to relief. (*Ibid.*)

Finally, calculating plaintiffs' damages based on profits they would have received had the contract been made was appropriate under either theory. (*Hernandez v. Lopez, supra*, 180 Cal.App.4th at pp. 938–939 [unjust enrichment authorizes paying amounts necessary to place plaintiffs in as good a position as they would have been if the contract had been made];

---

[4] There is some debate about whether unjust enrichment is a cause of action in California. (*Levine v. Blue Shield of California* (2010) 189 Cal.App.4th 1117, 1138 [finding no cause of action for unjust enrichment]; *Prakashpalan v. Engstrom, Lipscomb & Lack* (2014) 223 Cal.App.4th 1105, 1132 [stating elements of an unjust enrichment claim].) Neither party raised this issue and we need not resolve the debate here. We simply note that unjust enrichment is synonymous with restitution. (*Rutherford Holdings, LLC v. Plaza Del Rey* (2014) 223 Cal.App.4th 221, 231 [construing unjust enrichment claim as a quasi-contract claim seeking restitution].)

*Toscano v. Greene Music* (2004) 124 Cal.App.4th 685, 692 [damages under promissory estoppel are " 'measured by the extent of the obligation assumed and not performed' "].)  To the extent the statement of decision fails to fully identify the amount of damages awarded, that omission similarly does not warrant reversal.  (*Nunes, supra*, 200 Cal.App.3d at p. 1525.)  The decision states "the Court acceded to Plaintiff's request to limit the lost profits to $250,000 per year and then adopted Defendants' depreciable asset analysis from page 1 of their post-trial brief."  There is evidence in the record that plaintiffs ultimately requested $500,000, representing two years of lost profits, and that defendants proposed $55,917 for plaintiffs' depreciable assets.  (*Shaw v. County of Santa Cruz, supra*, 170 Cal.App.4th at p. 269 [appellate courts do not ignore the record when interpreting the lower court's findings and conclusions].)

In sum, the statement of decision's failure to clearly identify the equitable basis and amount of relief does not constitute reversible error.

## II.

Defendants next contend the statement of decision should be reversed and remanded because it fails to fully explain how the parties' violations of the ABC regulations — requiring a license to serve distilled spirits, prohibiting a tied-house arrangement, and limiting caterers to serving distilled spirits at 24 events per year — impact the calculation of plaintiffs' lost profit award.  (§§ 23300, 23399 [requiring a caterer permit for sale of distilled spirits "for consumption on the premises where sold"], 25500, subd. (a)(2); Cal. Code Regs., tit. 4, § 60.5, subd. (4).)  We conclude the decision adequately addresses the distilled spirts license and tied-house violations. But we agree the decision fails to adequately address the impact of the 24-

9

event limit in ABC regulations on its calculation of plaintiffs' anticipated lost profits.[5]

At the outset, the decision appears to broadly reject the ABC compliance issues. It explains defendants raised those issues after plaintiffs had already invested funds to create an event venue. On the issue of plaintiffs' serving distilled spirits without a license, the decision states plaintiffs obtained the appropriate license in 2017. The record supports this conclusion. As defendants acknowledge, plaintiffs had a license in 2017 — the year upon which the lost profits are calculated.

The decision further discusses the impact of the tied-house restrictions — requiring separation between wine manufacturers, wholesalers, and retailers like plaintiffs — on plaintiffs' lost profits. (§ 25500, subd. (a)(2); *California Beer Wholesalers Assn., Inc. v. Alcoholic Bev. etc. Appeals Bd.* (1971) 5 Cal.3d 402, 407.) It acknowledges plaintiffs' expert calculated their total anticipated lost profits through the remaining proposed lease and option period, approximately 12 years, at $1,417,534. The decision continues, noting the expert considered "the ABC noncompliance argument," and reduced plaintiffs' lost profits by $299 per event, or $20,930 based on plaintiffs hosting 70 events.[6] The decision considered and addressed the tied-house restrictions.

---

[5] After oral argument, plaintiffs submitted a request to file a supplemental brief. The issues identified in the court's focus letter were addressed in the parties' briefs, and both counsel had the further opportunity to address the identified issues at oral argument. The request to file a supplemental brief is denied.

[6] The expert used plaintiffs' income and profits from 2017 to calculate plaintiffs' future lost profits. In 2017, plaintiffs began complying with tied-house rules offering clients non-Nella Terra wines at their events, which the expert testified reduced plaintiffs' revenue by $299 per event, or a 1.5 percent reduction in their overall total revenue.

But the statement of decision does not explain whether these projected lost profits comply with title 4 of the California Code of Regulations, section 60.5. Under that section, an entity with a catering permit is authorized to sell alcohol at one specific premise for at most 24 events in one calendar year "except when [ABC] determines additional events may be catered to satisfy substantial public demand." (Cal. Code Regs., tit. 4, § 60.5, subd. (4); see also § 23399 [describing caterer's permit to sell beer, wine, and distilled spirits].) Determining whether plaintiffs' lost profit projections were based on 24 events was a principal controverted issue at trial. Moreover, defendants identified this issue in both their request for and objections to the proposed statement of decision. (*In re Marriage of Hoffmeister*, *supra*, 191 Cal.App.3d at p. 359.) The statement of decision nonetheless appears to award plaintiffs lost profits based on 70 events per year — the number of events plaintiffs' expert assumed would be held at Nella Terra each year. While the decision states "the undisputed evidence presented showed that defendants crafted an arrangement with another vendor which allowed them to host 45 events in 2018 and 59 in 2019," the relevance of those third party events to calculating *plaintiffs'* lost profits is unclear, especially because the other vendor did not supply alcohol to the events at all.

On this record, we cannot determine whether substantial evidence supports awarding plaintiffs their requested amount of lost profits. (*Nunes*, *supra*, 200 Cal.App.3d at p. 1525.) Plaintiffs' expert testified there were discussions regarding whether plaintiffs were limited to hosting 24 events but he assumed plaintiffs were allowed to host 70 events and calculated the estimated lost profits accordingly. Although plaintiffs assert they did not serve distilled spirits at all Nella Terra events — to which the 24-event limit does not apply — they do not identify, and we cannot determine, the number

11

of those events. Plaintiffs further argue they had two licenses at two locations, and believed they could host 48 events per year at which distilled spirits could be served. Even assuming this is accurate, plaintiffs' nonetheless lacked any authorization to host 70 events. That plaintiffs hired a vendor with the appropriate license to serve distilled spirits at events that exceeded 48 also does not assist plaintiffs, contrary to their assertions. The testimony plaintiffs cite in support of this argument simply details their service of distilled spirits through an alcohol distributor when they first operated at Nella Terra in 2014 and did not have a license. The record does not indicate whether this practice continued through 2017, the year upon which plaintiffs' lost profits are calculated.

At minimum, the trial court should have explained why it based plaintiffs' lost profit award on a number of events that are unauthorized under ABC regulations. (*Guan v. Hu* (2017) 12 Cal.App.5th 406, 420 [" ' "court of equity will *never* lend its aid to accomplish by indirect means what the law or its clearly defined policy forbids to be done directly" ' "].) Because the court's explanation concerning the amount of plaintiffs' lost profit award is inadequate, we remand with directions for the trial court to issue a complete statement of decision addressing how the 24-event limit for caterers set forth in California Code of Regulations, title 4, section 60.5 impacts the damages award. (*Dart Industries, Inc. v. Commercial Union Ins. Co.* (2002) 28 Cal.4th 1059, 1067 [noting reversal of judgment and remand to the trial court to address certain additional issues in a new statement of decision and to enter a new judgment based thereon].)

## DISPOSITION

The judgment is affirmed in part and reversed in part. The matter is remanded with directions to the trial court to issue a new statement of

decision addressing California Code of Regulations, title 4, section 60.5's impact on plaintiffs' lost profit award, and entering a new judgment based on that statement of decision. The parties shall bear their own costs on appeal.

_____

Rodríguez, J.

WE CONCUR:

_____

Tucher, P. J.

_____

Fujisaki, J.

A160574