Filed 1/24/22  Broadband ITV v. OpenTV CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BROADBAND ITV, INC.,<br><br>    Plaintiff and Appellant,<br>v.<br>OPENTV, INC.,<br><br>    Defendant and Respondent. | A160815<br><br>(San Francisco City & County<br>Super. Ct. No. CGC-17-561922) |

Plaintiff Broadband ITV, Inc. (Broadband) licensed its software to defendant OpenTV, Inc. (OpenTV) through a license agreement (Agreement) that contained a limitation of liability provision.  The provision states, "[i]n no event will the total liability of either party hereunder to the other party exceed, either individually or in the aggregate, the aggregate revenue share payments, if any, made by OpenTV under this Agreement (the 'Cap')."  (All caps. omitted.)

Years later, Broadband asserted various claims against OpenTV — including breach of the Agreement — and alleged OpenTV did not pay for using the software.  Relying on the limitation of liability provision, OpenTV moved for summary adjudication.  OpenTV argued its liability could not exceed the amount of revenue it paid Broadband and, because it did not make any such payments, its liability was thereby capped at zero.  The trial court

1

granted summary judgment, concluding the provision was enforceable and precluded Broadband's claims for damages.  Broadband appeals.  We affirm.

## BACKGROUND

In 2006, OpenTV and Broadband entered into the Agreement, which granted OpenTV a license to use Broadband's software; the software facilitates on-demand television viewing.  OpenTV intended to develop the software, create derivative software, and distribute it to OpenTV customers.  Section 3.2 of the Agreement (revenue share provision) states, "[Broadband] shall be entitled to a revenue share equal to [a percentage] of any Net Licensed Software Revenue actually received by OpenTV."  Under the Agreement, revenue is generated from license fees, royalties, revenue shares, and other amounts OpenTV receives from a customer that are "directly attributable" to OpenTV's sale, license, or other distribution of the software.

Section 8 of the Agreement (limitation of liability provision) states, "in no event shall either party be liable to the other party for any special, indirect or consequential loss or damages arising under this agreement."  (All caps. omitted.)  The provision continues, "[i]n no event will the total liability of either party hereunder to the other party exceed, either individually or in the aggregate, the aggregate revenue share payments, if any, made by OpenTV under this Agreement (the 'Cap')," except with respect to intellectual property infringement claims as to which Broadband was required to indemnify OpenTV pursuant to the Agreement.  (All caps. omitted.)  The provision further states, "[t]he parties acknowledge and agree that the limitations of liability in this [provision] . . . and the allocation of risk herein are an essential element of the bargain between the parties, without which either party would not have entered into this Agreement."

OpenTV never made any revenue share payments.  In 2016, however, Broadband believed OpenTV offered a product that used Broadband's technology, thereby triggering the obligation to pay revenue share payments. But OpenTV denied receiving revenue attributable to its use of Broadband's software.

The following year, Broadband sued OpenTV for breach of contract, breach of the implied covenant of good faith and fair dealing (bad faith), unjust enrichment, and seeking declaratory relief as well as an accounting of all money collected by OpenTV under the Agreement.  OpenTV filed a motion for summary adjudication of the breach of contract, bad faith, and unjust enrichment claims, arguing Broadband could not recover any damages. Relying on the limitation of liability provision, OpenTV argued its liability could not exceed the amount of revenue share payments it made to Broadband.  Because it never made any such payments, OpenTV contended, it could not be liable for damages.

Broadband countered that OpenTV's interpretation rendered the Agreement illusory by eliminating any consideration for the license, and unenforceable because parties may not benefit from their own wrongdoing. Moreover, Broadband argued that accepting OpenTV's interpretation would create an ambiguity since the Agreement also obligated OpenTV to make revenue share payments.  Broadband further argued that the parties did not intend to eliminate OpenTV's liability for owed revenue, a contention it attempted to support with extrinsic evidence.

The trial court rejected Broadband's arguments, declined to admit the offered extrinsic evidence, and concluded the Agreement's plain language capped OpenTV's liability at the amount of revenue share payments made to

Broadband.  It partially granted OpenTV's summary adjudication motion[1] and thereafter entered judgment following the parties' stipulation to dismiss the remaining causes of action.

## DISCUSSION

Broadband argues the trial court incorrectly interpreted the limitation of liability provision and erred in finding it enforceable.[2]  We disagree.

### I.

Summary adjudication must be granted if there is no triable issue of any material fact, and the moving party is entitled to prevail on a cause of action as a matter of law.  (Code Civ. Proc., § 437c, subd. (f)(1); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.)  A defendant moving for summary adjudication must demonstrate one or more essential elements of the plaintiff's cause of action cannot be established or there is a complete defense.  (Code Civ. Proc., § 437c, subd. (o); *Aguilar*, at p. 849.)  The plaintiff must then show a triable issue of material fact exists as to that cause of action or defense.  (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, at p. 849.)  We review an order granting summary adjudication de novo.  (*State Farm General Ins. Co. v. Wells Fargo Bank, N.A.* (2006) 143 Cal.App.4th 1098, 1105.)  In the absence of extrinsic evidence, interpreting a contract is

---

[1] The trial court denied OpenTV's motion for summary adjudication of Broadband's breach of contract claim based on OpenTV's alleged refusal to make its records available for the purpose of an audit as required under the Agreement.

[2] We do not address Broadband's argument that the trial court interpreted the limitation of liability provision as a condition precedent to bringing a breach of contract claim, and that such an interpretation violates the prevention doctrine.  Broadband failed to raise this argument in the trial court, thus forfeiting it on appeal.  (*Mattco Forge, Inc. v. Arthur Young & Co.* (1997) 52 Cal.App.4th 820, 847.)

4

a matter of law also subject to de novo review. (*Taylor v. Nu Digital Marketing, Inc.* (2016) 245 Cal.App.4th 283, 288.)

II.

At the outset, Broadband contends the trial court erroneously interpreted the limitation of liability provision as capping OpenTV's liability at the amount of revenue share payments it *made* to Broadband, rather than at the amount of payments OpenTV allegedly *owed*. But Broadband's arguments are belied by the language of the provision at issue.

When interpreting a contract, courts give effect to the mutual intention of the parties at the time they formed the contract. (Civ. Code, § 1636; *DVD Copy Control Assn., Inc. v. Kaleidescape, Inc*. (2009) 176 Cal.App.4th 697, 712 (*Kaleidescape*).)[3] That intent is discerned from the contract language if it is clear, explicit, and does not involve an absurdity. (§ 1638; *Kaleidescape*, at p. 712.) "We consider the contract as a whole, and interpret contested provisions in their context, not in isolation, with the aim of giving effect to all provisions, if doing so is reasonably possible." (*Camacho v. Target Corp.* (2018) 24 Cal.App.5th 291, 306.)

A limitation of liability provision protects a wrongdoer from unlimited liability. (*Food Safety Net Services v. Eco Safe Systems USA, Inc.* (2012) 209 Cal.App.4th 1118, 1126 (*Food Safety*).) Provisions seeking to limit liability are "strictly construed and any ambiguities resolved against the party seeking to limit its liability . . . ." (*Nunes Turfgrass, Inc. v. Vaughan-Jacklin Seed Co.* (1988) 200 Cal.App.3d 1518, 1538.) In *Food Safety*, the court determined the following language limited the recovery of damages: "In no event shall [Food Safety] be liable for . . . damages . . . . [Food Safety's] total liability to you in connection with the work herein covered for any and

---

[3] Undesignated statutory references are to the Civil Code.

all . . . damages whatsoever arising out of or in any way related to the work herein covered, from any cause or causes, shall not exceed an amount equal to the lesser of (a) damages suffered by you as the direct result thereof, or (b) the total amount paid by you to [Food Safety] for the services herein covered." (*Food Safety*, at p. 1126, all caps. omitted, bracketed material in original.) The court emphasized that the phrases "in no event," "arising . . . in any way," and from "any cause or causes" in the provision constituted broad and unqualified language that operated to limit liability for breach of contract, bad faith, and negligence claims. (*Id.* at p. 1128 [affirming summary adjudication since limited liability clause barred recovery of damages].)

The limitation of liability provision here is equally clear. It states, "in no event will the total liability of either party hereunder to the other party exceed . . . the aggregate revenue share payments, if any, made by OpenTV." (All caps. omitted.) Even strictly construing this language against OpenTV, it unambiguously limits either party's liability to the amount of revenue share payments *made* (rather than *owed*, as Broadband asserts) by OpenTV. It further contemplates — as evidenced by use of the phrase "if any" — the possibility that OpenTV might not make *any* such payments. (See *Nunes Turfgrass, Inc. v. Vaughan-Jacklin Seed Co.*, *supra*, 200 Cal.App.3d at p. 1538.) Moreover, that the provision was intended to apply to virtually all causes of action arising under the Agreement can be inferred from its excepting claims for intellectual property infringement for which Broadband was required to indemnify OpenTV. (See *Flores v. Axxis Network & Telecommunications, Inc.* (2009) 173 Cal.App.4th 802, 809 [arbitration provision expressly carving out complaints of statutory and regulatory wage violations otherwise applied to generic disputes or grievances].) As in *Food Safety*, "[b]ecause it is undisputed that [the defendant] has paid nothing to

6

[the plaintiff] . . . , the [limitation of liability] clause thus prohibits a recovery for breach of contract." (*Food Safety*, *supra*, 209 Cal.App.4th at p. 1127 [affirming summary judgment based on limitation of liability provision].) Broadband's bad faith claim is likewise precluded. (*Ibid.* [provision also precluded bad faith claim].)[4]

Citing the revenue share provision, Broadband argues the Agreement's primary purpose is to provide Broadband revenue in exchange for the use of its software. According to Broadband, OpenTV's interpretation of the limitation of liability provision "conflicts" with the revenue share provision because it effectively precludes recovery of any revenue even if OpenTV indisputably owes, but does not make, such payments.[5] On that basis, Broadband urges us to "reconcile" these two provisions by interpreting the limitation of liability provision as capping the liability of either party at the amount of revenue share payments OpenTV *owed*, not made. But the language in the limitation of liability provision explicitly forecloses Broadband's interpretation. The language could not be more clear: "[i]n no event will the total liability of either party . . . exceed . . . the aggregate revenue share payments, if any, *made* by OpenTV." (Italics added; all caps. omitted.) We decline to rewrite the Agreement in the manner suggested by

---

[4] At oral argument, Broadband's counsel asserted the cap in the limitation of liability provision applies only to "special, indirect or consequential loss or damages" and not to ordinary damages for breach of contract. As this contention was raised for the first time at oral argument, we decline to consider it. (*New Plumbing Contractors, Inc. v. Nationwide Mutual Ins. Co.* (1992) 7 Cal.App.4th 1088, 1098 ["[n]ew issues cannot generally be raised for the first time in oral argument"].)

[5] It is unclear whether OpenTV wrongfully refused to pay Broadband revenue required under the Agreement. OpenTV denied having received any revenue as a result of Broadband's software and, as discussed further below, Broadband's complaint does not allege OpenTV engaged in fraud.

7

Broadband. (*Series AGI West Linn of Appian Group Investors DE, LLC v. Eves* (2013) 217 Cal.App.4th 156, 164 ["courts will not rewrite contracts to relieve parties from bad deals nor make better deals for parties than they negotiated for themselves"].)

Moreover, no conflict exists between the revenue share and the limitation of liability provisions. The former sets forth OpenTV's obligation to pay Broadband a share of any revenue it receives as a result of the software. But the provision also states, "OpenTV does not represent or warrant that it will be successful in developing, marketing, or distributing" Broadband's software, and "there are no minimum or guaranteed Revenue Share payments under this Agreement." Thus, the parties contemplated OpenTV might not obtain any revenue from Broadband's software and, consequently, OpenTV might not owe any revenue share payments. (See *Kaleidescape*, *supra*, 176 Cal.App.4th at p. 712 [discerning intent through contract language].) The limitation of liability provision thereafter caps the liability of either party — OpenTV or Broadband — at the amount of payments made pursuant to the revenue share provision. Thus, contrary to Broadband's argument, the two provisions do not conflict, but instead work together.

Broadband next contends that extrinsic evidence — primarily other OpenTV contracts containing language that Broadband argues is similar to the limitation of liability provision here — demonstrates the Agreement is reasonably susceptible to its proffered interpretation. It also asserts the Agreement's limitation of liability provision uses OpenTV's standard, boilerplate language that, in prior instances, OpenTV admitted did not preclude liability for fees *owed* under the contracts. Broadband insists the

8

trial court should have admitted this extrinsic evidence to demonstrate the Agreement was ambiguous. We disagree.

An agreement is ambiguous if it is reasonably susceptible to more than one interpretation. (*Oceanside 84, Ltd. v. Fidelity Federal Bank* (1997) 56 Cal.App.4th 1441, 1448.) A contract that appears unambiguous on its face may nonetheless contain a latent ambiguity exposed by extrinsic evidence. (*Wolf v. Superior Court* (2004) 114 Cal.App.4th 1343, 1351.) If after considering this evidence, the court decides the contract language is reasonably susceptible to different interpretations, the extrinsic evidence is admissible to aid in interpreting the contract. (*Kaleidescape*, *supra*, 176 Cal.App.4th at p. 712.) But while a party's prior interpretation of its standard form contract may be admissible to identify the parties' intended meaning regarding the same form contract provision in a new proceeding, those circumstances do not exist here. (*Heston v. Farmers Ins. Group* (1984) 160 Cal.App.3d 402, 407, 413.)

Critically, and contrary to Broadband's assertions, the limited liability provisions in the Agreement and third-party contracts differ in material respects.[6] And Broadband alleged it engaged in extensive negotiations with OpenTV when drafting the Agreement. Indeed, the parties exchanged drafts revising the Agreement's limitation of liability language. Because the prior contracts contain materially different language from the provision at issue here, OpenTV's interpretation of prior, distinguishable language has no bearing on the intended meaning of the Agreement. (Compare with *Heston v. Farmers Ins. Group*, *supra*, 160 Cal.App.3d at pp. 413–414 [statement from

---

[6] We have examined the third-party contracts but do not provide details here because they are sealed pursuant to a trial court order.

9

a legal brief filed in a prior proceeding evidenced the meaning of identical form language at issue in new proceeding].) Thus, the trial court did not err in declining to admit the prior contracts as extrinsic evidence. (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1167 [extrinsic evidence only admissible "to prove a meaning to which the language is 'reasonably susceptible,'" "not to flatly contradict the express terms of the agreement"].)

Broadband also urges us to reject Open TV's interpretation because it would lead to absurdities — OpenTV could refuse to pay Broadband even if it collected revenue based on the software but face no liability.[7] (*Kaleidescape*, *supra*, 176 Cal.App.4th at p. 712.) But the provision limits both parties' liability, not simply OpenTV's. If Broadband breached the Agreement, its liability would also be capped at the amount of revenue payments OpenTV made. For example, if OpenTV expended significant resources to develop the software, but those efforts had not yet resulted in revenue, OpenTV would be unable to recover any damages if Broadband breached the Agreement. In other words, the limitation of liability provision simply reflects the parties' effort to allocate risk amongst themselves. (*CAZA Drilling (California), Inc. v. TEG Oil & Gas U.S.A., Inc.* (2006) 142 Cal.App.4th 453, 475 [limited liability provision that precluded recovery of damages against drilling contractor for personal and property injury was enforceable].) Indeed, the parties agreed that the provision and its "allocation of risk . . . are an essential element of the bargain between the parties without which either party would not have entered into this Agreement."

---

[7] At oral argument, both counsel appeared to agree the limited liability provision does not address or limit equitable remedies. In any event, because we only address OpenTV's liability for damages, we have no occasion to express an opinion regarding the availability of other remedies, such as equitable relief, under the facts of this case.

In any event, the Agreement permits prospective relief for OpenTV's potential wrongful acts. Section 3.4 mandates OpenTV's maintenance of complete and accurate records, subject to audit, for determining revenue shares payable to Broadband. There is also nothing precluding Broadband from seeking a declaration of its rights to establish an entitlement to future revenue payments. (*Kirkwood v. California State Automobile Assn. Inter-Ins. Bureau* (2011) 193 Cal.App.4th 49, 59 [declaratory relief used to "set controversies at rest before obligations are repudiated, rights are invaded or wrongs are committed"].) Indeed, Broadband's complaint seeks such a declaration regarding OpenTV's rights and duties to pay Broadband based on revenue OpenTV's affiliates received from using its software. Hence, construing the limitation of liability provision as capping liability at payments OpenTV actually made does not result in an absurdity. The cases Broadband cites do not alter that conclusion.

We similarly reject Broadband's contention that enforcing the Agreement's plain language would result in an illusory contract. A contract is "illusory when one of the parties . . . assumes no obligations thereunder . . . [or] provides no legal consideration." (*Harris v. TAP Worldwide, LLC* (2016) 248 Cal.App.4th 373, 385.) Consideration is "[a]ny benefit conferred, or agreed to be conferred, upon the promisor, by any other person . . . or any prejudice suffered, or agreed to be suffered, by such person . . . as an inducement to the promisor." (§ 1605; see *San Diego City Firefighters, Local 145 v. Board of Administration etc.* (2012) 206 Cal.App.4th 594, 619.) Broadband insists the Agreement lacks consideration because OpenTV has no binding obligation to make any requisite revenue payments. Not so.

Under the revenue share provision, OpenTV is obliged to pay revenue share payments if it is successful in selling Broadband's software. (*JMR Construction Corp. v. Environmental Assessment & Remediation Management, Inc.* (2015) 243 Cal.App.4th 571, 593 [" '[P]arties may expressly agree that a right or duty is conditional upon the occurrence or nonoccurrence of an act or event' "].) OpenTV also must share revenue reports with Broadband, and any payments to Broadband "shall be due from OpenTV" within 45 days of the calendar quarter in which the revenue share was generated. In return for using Broadband's software, OpenTV promised Broadband access to its records through an auditing process, allowing Broadband to discover potential entitlement to revenue share payments. Moreover, contrary to Broadband's assertions, the limitation of liability provision does not relieve OpenTV's obligation to pay revenue. Indeed, OpenTV concedes Broadband may seek specific performance to enforce its right to ongoing payments. Instead, the provision simply limits either party's liability. OpenTV further agreed to indemnify Broadband for claims arising out of use of Broadband's software. We conclude, as did the trial court, that the Agreement is supported by adequate consideration. (*San Diego City Firefighters, Local 145 v. Board of Administration etc.*, *supra*, 206 Cal.App.4th at p. 619 [the proverbial peppercorn is sufficient consideration].)[8]

---

[8] In light of this conclusion, we reject Broadband's request to use the implied covenant of good faith and fair dealing to imply a term into the Agreement. (*Third Story Music, Inc. v. Waits* (1995) 41 Cal.App.4th 798, 808 [covenant can be implied in those rare instances where literal reading of a contract results "in an unenforceable, illusory agreement," not when the contract is unambiguous].) We also reject Broadband's request to sever the words "made by OpenTV" from the limitation of liability clause. (*Armendariz*

III.

Broadband finally argues the limitation of liability provision does not preclude recovery of damages because it is unenforceable. Per Broadband, the provision violates the public policy against parties contracting away liability for fraudulent or intentional acts, or from benefiting from their own wrongs. We are not persuaded.

The dispute here involves two commercial companies who agreed the limitation of liability provision is an "essential element of the bargain between the parties." In general, "no public policy opposes private, voluntary transactions in which one party, for a consideration, agrees to shoulder a risk which the law would otherwise have placed upon the other party." (*Tunkl v. Regents of Univ. of Cal.* (1963) 60 Cal.2d 92, 96, 101 [contractual provision exempting a party from liability for negligence may be invalid if contained in a contract that affects the public interest, as determined by several factors].) Instead, "contractual allocations of risk in nonconsumer commercial settings are routinely upheld." (*Philippine Airlines v. McDonnell Douglas Corp.* (1987) 189 Cal.App.3d 234, 242.) Moreover, "[w]ith respect to claims for breach of contract, limitation of liability clauses are enforceable unless they are unconscionable, that is, the improper result of unequal bargaining power or contrary to public policy." (*Food Safety, supra,* 209 Cal.App.4th at p. 1126.)

But Broadband does not argue the limitation of liability provision here is the result of unequal bargaining power or that the terms are substantively

___

*v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 123–124 [authorizing severance of illegal terms of a contract].)

unconscionable.[9] Instead, Broadband insists the provision violates the public policies enshrined in sections 3517 and 1668 as well as in *Pacific Venture Corp. v. Huey* (1940) 15 Cal.2d 711, preventing parties from benefiting from their own wrongs. We disagree. Section 3517, identifying the clean hands doctrine that "[n]o one can take advantage of his own wrong," is simply a maxim of jurisprudence that aids application of the Civil Code. (§§ 3517, 3509 [purpose of maxims]; see also *Pacific Venture Corp.*, at p. 717.) It cannot overcome the plain language of a contract. (See, e.g., *Gilkyson v. Disney Enterprises, Inc.* (2021) 66 Cal.App.5th 900, 923 [general argument based on Civil Code maxims of jurisprudence cannot be used to rewrite the express language of the parties' agreement].)

And section 1668 does not automatically invalidate *any* limitation on liability. Rather, it makes clear that a party cannot exempt itself from liability for its fraudulent or intentional acts. (§ 1668 [contracts "exempt[ing] anyone from responsibility for his own fraud, or willful injury to a person or property of another, or violation of law" violate public policy]; *Health Net of California, Inc. v. Department of Health Services* (2003) 113 Cal.App.4th 224, 233 [§ 1668 is not construed "to invalidate all contracts that seek to exempt a party from responsibility for . . . any common law or contractual violation; otherwise, there would be no need for the statute to separately identify fraud or willful injury"].) The limitation of liability provision here, however, does not exempt OpenTV from all liability, it simply limited it to the amount of

---

[9] Broadband acknowledges it engaged in extensive negotiations with OpenTV before OpenTV presented Broadband with a draft of the Agreement, thus the agreement is not the improper result of unequal bargaining power. (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 247 [procedural unconscionability requires oppression, which involves lack of negotiation].)

revenue payments OpenTV actually made.  (*Farnham v. Superior Court* (1997) 60 Cal.App.4th 69, 78.)  More importantly, Broadband's complaint does not allege OpenTV engaged in fraud, only breach of contract, bad faith, and unjust enrichment based entirely on the Agreement.  (*Food Safety*, *supra*, 209 Cal.App.4th at p. 1130 ["party alleging fraud or deceit in connection with a contract must establish tortious conduct independent of a breach of the contract itself"].)  Broadband's allegation that OpenTV manipulated and concealed the true revenue from use of Broadband's products — part of its bad faith claim — does not state a claim of fraud, contrary to Broadband's assertions otherwise.[10]  (*Id.* at p. 1130, fn. 5 [elements for fraud are misrepresentation, knowledge of falsity, intent to defraud, and justifiable reliance resulting in damage].)

We conclude the limitation of liability provision is enforceable, and it precludes Broadband's claims.[11]

## DISPOSITION

The judgment is affirmed.

---

[10] In fact, during a hearing on OpenTV's motion for summary adjudication, Broadband's counsel requested leave to amend the complaint to add a fraud claim, implicitly conceding Broadband did not allege fraud.

[11] We do not address Broadband's brief assertion it is entitled to pursue an unjust enrichment claim.  As it did in the trial court, Broadband takes the position that this claim is contingent upon on our determination the limitation of liability provision is unenforceable.

_____

Rodríguez, J.


WE CONCUR:


_____

Fujisaki, Acting P. J.


_____

Petrou, J.


A160815