Filed 10/28/24; Certified for Publication 11/22/24 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| JOHNATHAN SLONE, M.D., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> EL CENTRO REGIONAL MEDICAL CENTER, <br><br> Defendant and Respondent. | D082341 <br><br><br> (Super. Ct. No. ECU000797) |

APPEAL from a judgment of the Superior Court of Imperial County, L. Brooks Anderholt, Judge.  Affirmed.

Law Offices of David A. Kaufman and David A. Kaufman for Plaintiff and Appellant.

Buchalter, Carol A. Salmacia and David M. Balfour for Defendant and Respondent.


Plaintiff Johnathan Slone, M.D., appeals a judgment after a court trial finding in favor of defendant El Centro Regional Medical Center (Center) in his action against it for unlawful retaliation in violation of Health and Safety

Code[1] section 1278.5.  Slone contends that:  (1) the doctrine of implied findings does not apply to support the judgment; and (2) substantial evidence does not support the judgment and the trial court's underlying findings.  As explained below, we conclude that Slone has not carried his burden on appeal on either contention and therefore affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In 2013, Slone began working as a general surgeon at Center, a hospital located in El Centro, on a locum tenens basis.[2]  Although Slone was not a board-certified surgeon, Center allowed him to work there as a surgeon.[3]  In January 2015, Center granted Slone full staff privileges to work as a general surgeon "in accordance with the medical staff bylaws, rules and regulations."

In April 2016, Slone became an employee of the Imperial Valley Multi-Specialty Medical Group (IVMSMG), which Dr. Theodore Affue, Center's former chief of surgery, had formed, receiving a salary of $260,000 per year for 40 hours of work per week.  In May, Slone entered into a contract on behalf of IVMSMG with Community Care IPA (IPA) to provide healthcare administrative services as its medical director.  His IPA compensation was paid directly to IVMSMG.  Slone had a residence in San Diego and provided administrative services to IPA from there on Fridays and Mondays.  He also

---

[1]  All statutory references are to the Health and Safety Code unless otherwise specified.

[2]  "Locum tenens" is a term describing the status of physicians who work at hospitals for a temporary period of time.

[3]  When Slone applied for hospital privileges, he informed Center that he was eligible to take his board examination until August 2014.  Thereafter, Slone took the board examination and did not pass.

2

had a residence in El Centro and from there he provided surgical and clinical services to IVMSMG and administrative services to IPA on Tuesdays, Wednesdays, and Thursdays.

In September 2016, Slone applied to renew his privileges to work at Center and it renewed his privileges in December.[4]

In April 2017, Slone entered into another contract to provide healthcare administrative services to IPA as its medical director, but did so on behalf of his own corporation, University Surgical Group, Inc. (USGI), rather than on behalf of IVMSMG. By the summer of 2017, IVMSMG (Affue's group) had not paid Slone his last 12 paychecks.

On July 17, Center mailed a letter to Slone, notifying him of the department of surgery's rule 3.2, which requires members to become board-certified within five years or, alternatively, to have had privileges at an accredited hospital for at least 10 years. The letter granted Slone until July 2020 to become board-certified.

On July 19, Slone told IPA to send its checks directly to him (presumably to USGI), rather than to IVMSMG. On the morning of July 20, Slone cancelled his surgeries that had been rescheduled to that afternoon because he would instead be tying up a full-time position as IPA's medical director then. That afternoon, Slone sent Affue his letter of resignation from IVMSMG, citing "many reasons, primarily financial and recent proceedings taking place at [Center] that will inevitably cause me to lose my privileges [i.e., its requirement for his future board certification]." In late July or early

---

[4]     In its December 2016 letter, Center stated that Slone's renewed privileges were subject to "other requirements established in the medical staff bylaws and general rules and regulations, applicable department rules and regulations, and results from ongoing performance evaluations."

August, Slone began working for IPA as its full-time medical director. Thereafter, he did not perform any surgeries.

On about September 7, Center sent Slone a letter suspending his privileges for his failure to sign off on certain patients' medical records and apparently stating that he had 90 days to sign the records or his suspension would become a voluntary resignation of his privileges. On December 18, Center sent Slone a letter stating that his suspension would continue and his failure to complete medical records within 90 days after his suspension would be deemed to be a voluntary resignation of his staff privileges. Slone did not sign off on the medical records in question. In March 2018, Center sent Slone a letter stating that his suspension had become a voluntary resignation of his privileges.

In February 2021, Slone filed his operative fourth amended complaint against Center, alleging four causes of action. His first cause of action alleged that Center violated section 1278.5 by retaliating against him after he reported his concerns about patient care. The action ultimately proceeded to a bench trial solely on his section 1278.5 cause of action. Following a four-day trial, the court issued its tentative ruling in favor of Center. Slone requested a statement of decision, Center's counsel prepared a proposed statement of decision (PSOD) per the court's direction, and Slone objected to portions of the PSOD. On April 12, 2023, the trial court issued its final statement of decision (FSOD) making findings on ultimate facts and material issues and finding in favor of Center on Slone's section 1278.5 cause of action. On April 25, the court entered a judgment for Center. Slone filed a notice of appeal challenging the judgment.

## DISCUSSION

### I

*Section 1278.5 Generally*

In 1999, the Legislature enacted section 1278.5, which provides remedies for those health care workers (i.e., "whistleblowers") who suffer retaliation for reporting suspected unsafe patient care and conditions at a health care facility. (§ 1278.5, subds. (a), (b), (g); *Fahlen v. Sutter Central Valley Hospitals* (2014) 58 Cal.4th 655, 667; *Alborzi v. University of Southern California* (2020) 55 Cal.App.5th 155, 162, 178-179 (*Alborzi*).) Section 1278.5, subdivision (b)(1) provides: "A health care facility shall not discriminate or retaliate, in any manner against a patient, employee, member of the medical staff, or other health care worker of the health facility because that person has done either of the following: [¶] (A) [p]resented a grievance, complaint, or report to the facility, to an entity or agency responsible for accrediting or evaluating the facility, or the medical staff of the facility, or to any other governmental entity. . . ."

Section 1278.5, subdivision (d) provides: "(1) There shall be a rebuttable presumption that discriminatory action was taken by the health facility . . . in retaliation against an employee, member of the medical staff, or any other health care worker of the facility, if responsible staff at the facility . . . had knowledge of the actions, participation, or cooperation of the person responsible for any acts described in paragraph (1) of subdivision (b), and the discriminatory action occurs within 120 days of the filing of the grievance or complaint by the employee, member of the medical staff or any other health care worker of the facility. [¶] (2) For purposes of this section, discriminatory treatment of an employee, member of the medical staff, or any other health care worker includes, but is not limited to, discharge, demotion,

5

suspension, or any unfavorable changes in, or breach of, the terms or conditions of a contract, employment, or privileges of the employee, member of the medical staff, or any other health care worker of the health care facility, or the threat of any of these actions."

Section 1278.5, subdivision (g) provides in relevant part: "A member of the medical staff who has been discriminated against pursuant to this section shall be entitled to reinstatement, reimbursement for lost income resulting from any change in the terms or conditions of the member's privileges caused by the acts of the facility . . . , and the legal costs associated with pursuing the case, or to any remedy deemed warranted by the court pursuant to this chapter or any other applicable provision of statutory or common law."

"[T]o establish a prima facie case under section 1278.5, a plaintiff must show that he or she (1) presented a grievance, complaint, or report to the hospital or medical staff (2) regarding the quality of patient care and (3) the hospital retaliated against him or her for doing so. (§ 1278.5, subd. (b)(1).)" (*Alborzi, supra*, 55 Cal.App.5th at p. 179.) Alternatively stated, to make a prima facie case of retaliation, a plaintiff "must show (1) she [or he] engaged in a protected activity, (2) her [or his] employer [or other defendant] subjected her [or him] to an adverse employment action, and (3) a causal link between the two." (*St. Myers v. Dignity Health* (2019) 44 Cal.App.5th 301, 314.) In enacting section 1278.5, "the Legislature intended section 1278.5 to encompass a broad array of discriminatory actions." (*Alborzi*, at p. 180.) Nevertheless, to show an action was retaliatory, or an adverse employment action, a plaintiff must show that action was material and had a detrimental and substantial effect on the plaintiff's employment or privileges. (*St. Myers*, at p. 318; cf. *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1054 [regarding FEHA retaliation cause of action, minor or relatively trivial

6

actions cannot constitute adverse employment actions]; *Akers v. County of San Diego* (2002) 95 Cal.App.4th 1441, 1455 [same regarding FEHA retaliation cause of action].)  For example, "[a]n isolated incident, such as a delay in the delivery of a single paycheck, a failure to receive an overtime check or an early job change, does not constitute an adverse employment action." (*Jones v. Department of Corrections & Rehabilitation* (2007) 152 Cal.App.4th 1367, 1381 [regarding FEHA cause of action].)  "[I]n the end, the determination of whether there was an adverse employment action is made on a case-by-case basis, in light of the objective evidence." (*Ibid.*)

II

*Doctrine of Implied Findings*

Slone contends that the doctrine of implied findings does not apply to support the judgment because he filed objections to the PSOD on the grounds that it did not address certain principal or material controverted issues and/or was ambiguous in its findings on those issues.

A

As discussed above, after the trial court announced its tentative decision, Slone requested a statement of decision on certain issues that he asserted were principal controverted issues.  In particular, he requested a finding on whether Center took any adverse action against him because of his lodging of complaints, reports, or grievances to Center regarding the quality of patient care.  Per the court's direction, Center's counsel prepared a PSOD, proposing certain findings by the court on principal or material controverted issues.  In particular, the PSOD proposed that the court make a finding that, assuming Slone had presented a grievance, complaint, or report to Center within the meaning of section 1278.5, Center did not discriminate or retaliate against Slone in any manner.  In support of that finding, the PSOD proposed

7

underlying factual findings by the court on Slone's specific allegations of discrimination or retaliation and included a discussion of the evidence supporting its rejection of those specific allegations. The PSOD also proposed findings by the court that, assuming Center was liable to Slone for retaliation under section 1278.5, Slone did not suffer any economic or noneconomic damages because of that assumed retaliation.

Slone filed objections to the PSOD, asserting that it failed to make findings on or resolve principal controverted issues, failed to explain the factual and legal basis for its findings, and/or was ambiguous in its findings. In particular, Slone asserted that the PSOD omitted findings on his specific allegations of retaliation by Center, but, in so doing, he primarily cited evidence and/or inferences favorable to him that would support findings contrary to the PSOD's proposed findings on those allegations. Likewise, Slone's objections to the other proposed findings in the PSOD cited evidence that would support contrary findings and did not specify any omissions in the PSOD's findings on principal controverted issues.

In its FSOD, the trial court stated that it had considered all of Slone's objections to the PSOD. The FSOD then set forth the court's findings on the ultimate facts and material issues in the case. First, the court found that Slone had presented a grievance, complaint, or report to Center within the meaning of section 1278.5 (e.g., how patients were handled in the ICU, the lack of equipment and instruments for surgery, having to work too many days in a row, etc.). Second, the court found that Center did not discriminate or retaliate against Slone in any manner because of his grievances, complaints, or reports to it. In particular, the court found that Center's July 17, 2017 letter advising him that he had until July 2020 to become board-certified, its September 7, 2017 letter suspending Slone's privileges, its

8

March 2018 letter stating that he had voluntarily resigned his privileges, its peer reviews of him, and its reductions of his surgery block times were not in retaliation for his grievances, complaints, or reports to Center.

In the FSOD's sixth finding, the court found that, assuming Center had unlawfully retaliated against Slone, he had not suffered any economic damages. In so finding, the court stated:

> "Testimony of [Slone] about [the April 3, 2017 contract with IPA] and the next few months, including leaving [his] surgery practice with [Center] was less than credible. [Slone] abandoned several patients on the day they were scheduled for surgery (July 20, 2017) without explanation. He did not return at all to the hospital. . . . [Slone] intended to leave surgical practice and give up his privileges with [Center] to pursue a career as a medical administrator. The timing of the 2017 contract, which was prior to most of the alleged adverse actions, leads this Court to the conclusion that [Slone] already intended to make the career change; and the abandonment of patients literally waiting to be admitted for surgery and no evidence of any future patients substantiates this finding and conclusion."

The court further found: "[Slone] confirmed an agreement the day before [his July 20, 2017 resignation from IVMSMG] on July 19, 2017, to go to work for an IPA. This agreement precluded doing any surgeries. [Slone's] intent was to change employment to the IPA instead of continuing to develop his practice as a surgeon." The court also found that the opinions of Slone's expert on his economic damages were "speculative."

Finally, in the FSOD's seventh finding, the court found that, assuming Center had unlawfully retaliated against Slone, he had not suffered any noneconomic damages. In particular, the court found: "There was no compelling evidence [Slone] suffered any emotional distress as a result of his claim [Center] retaliated against him. [¶] [Slone] testified he loves his work

9

at the IPA and it is financially beneficial."  Following issuance of its FSOD, the trial court entered judgment in favor of Center and against Slone.

B

Under Code of Civil Procedure section 632, on a request by a party after a court trial, the court "shall issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial."  After a statement of decision is requested, any party may make proposals as to the content of the statement of decision. (*Ibid.*)  Code of Civil Procedure section 634 provides:

> "When a statement of decision does not resolve a controverted issue, or if the statement is ambiguous and the record shows that the omission or ambiguity was brought to the attention of the trial court either prior to entry of judgment or in conjunction with a motion under Section 657 or 663, it shall not be inferred on appeal or upon a motion under Section 657 or 663 that the trial court decided in favor of the prevailing party as to those facts or on that issue."

"The clear implication of [Code of Civil Procedure section 634], of course, is that if a party does not bring such deficiencies to the trial court's attention, that party waives the right to claim on appeal that the statement was deficient in these regards, and hence the appellate court will imply findings to support the judgment." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133-1134.)

"Ordinarily, when the court's statement of decision is ambiguous or omits material factual findings, a reviewing court is required to infer any factual findings necessary to support the judgment.  [Citations.]  This rule 'is a natural and logical corollary to three fundamental principles of appellate review:  (1) a judgment is presumed correct; (2) all intendments and presumptions are indulged in favor of correctness; and (3) the appellant bears

10

the burden of providing an adequate record affirmatively proving error.' [Citation.] [¶] In order to avoid the application of this doctrine of implied findings, an appellant must take two steps. First, the appellant must request a statement of decision . . . ; second, if the trial court issues a statement of decision, 'a party claiming omissions or ambiguities in the factual findings must bring the omissions or ambiguities to the trial court's attention' . . . . [Citation.]" (*Ermoian v. Desert Hospital* (2007) 152 Cal.App.4th 475, 494.) However, a party cannot avoid the application of the doctrine of implied findings by asserting "objections" which merely disagree with the trial court's findings in its statement of decision. (*Duarte Nursery, Inc. v. California Grape Rootstock Improvement Com.* (2015) 239 Cal.App.4th 1000, 1012-1013 (*Duarte Nursery, Inc.*).)

A trial court's statement of decision "is sufficient if it fairly discloses the court's determination as to the ultimate facts and material issues in the case." (*Golden Eagle Ins. Co. v. Foremost Ins. Co.* (1993) 20 Cal.App.4th 1372, 1380.) "[A] trial court is not required to make an express finding of fact on every factual matter controverted at trial, where the statement of decision sufficiently disposes of all the basic issues in the case." (*Bauer v. Bauer* (1996) 46 Cal.App.4th 1106, 1118; see also, *Pannu v. Land Rover North America, Inc.* (2011) 191 Cal.App.4th 1298, 1314, fn. 12 [" '[T]he trial court is not required to respond point by point to issues posed in a request for a statement of decision.' "].) In this context, "the term 'ultimate fact' generally refers to a core fact, such as an essential element of a claim." (*Central Vally General Hospital v. Smith* (2008) 162 Cal.App.4th 501, 513.) Accordingly, "[a] trial court is not required to make findings with regard to detailed evidentiary facts or to make minute findings as to individual items of

11

evidence." (*Nunes Turfgrass, Inc. v. Vaughan-Jacklin Seed Co.* (1988) 200 Cal.App.3d 1518, 1525.)

C

In his appellant's opening brief, Slone argues that the doctrine of implied findings does not apply to support the judgment because he sufficiently objected to the PSOD's proposed findings as omitting determinations on principal controverted issues and/or making ambiguous determinations on issues. However, Slone's argument is *conclusory* and fails to cite any specific omissions from, or ambiguities in, the FSOD's findings. For example, Slone argues in his appellant's opening brief that he "identified omissions or ambiguities in the controverted material factual issues in the [PSOD], bringing these to the attention of the Court, but to which adequate responses were never made, as the Court merely adopted the [PSOD] as the [FSOD] [citation]." However, in so arguing, he does not cite to any portion of the record on appeal showing that he made any objections to omissions of, or ambiguities in, findings of any *specific* principal controverted issue.

"In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record. Rather than scour the record unguided, we may decide that the appellant has waived a point urged on appeal when it is not supported by accurate citations to the record. [Citations.] Similarly, we may disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt. [Citation.]" (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286-287 (*City of Santa Maria*); see also, *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.) Furthermore, an appellant waives or forfeits contentions that are not supported by citations to

12

relevant portions of the record. (*Ojavan Investors, Inc. v. California Coastal Com.* (1997) 54 Cal.App.4th 373, 391.) Because Slone's argument is *conclusory* and he fails to cite to specific portions of the record showing that there were any specific omissions from, or ambiguities in, the FSOD's findings, we conclude Slone has waived or forfeited any contention that the FSOD was deficient and therefore precludes the application of the doctrine of implied findings. (*Ibid.*)

In any event, we further conclude that by not citing to specific portions of the record and/or citing specific objections that he asserted were omissions from, or ambiguities in, the PSOD and/or FSOD on specific principal controverted issues, Slone has not carried his burden on appeal to show the purported error. On appeal, a judgment is presumed to be correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) To demonstrate error, the appellant must present a cogent argument supported by legal analysis and relevant citations to the record. (*City of Santa Maria, supra*, 211 Cal.App.4th at pp. 286-287.) Slone has not carried his burden to show the trial court's FSOD omitted any findings, or made ambiguous findings, on any specific principal controverted issue, which would preclude the application of the doctrine of implied findings on that specific issue. Rather, based on our review of the record, it appears that Slone's "objections" to the PSOD simply cited evidence that would have supported contrary findings and, in so doing, improperly disagreed with its proposed findings. (*Duarte Nursery, Inc., supra*, 239 Cal.App.4th at pp. 1012-1013.) Accordingly, we reject his contention that the doctrine of implied findings does not apply to support the judgment.

13

III

*Substantial Evidence to Support Judgment*

Slone contends that substantial evidence does not support the judgment and the court's underlying findings. However, in so arguing, he primarily, if not exclusively, cites evidence and inferences favorable to him.

A

When an appellant contends there is insufficient evidence to support a finding of fact, we apply the substantial evidence standard of review. (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 581.) Under that standard of review, "the power of an appellate court begins and ends with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding of fact." (*Grainger v. Antoyan* (1957) 48 Cal.2d 805, 807 (*Grainger*), italics omitted.) In so doing, we accept all evidence that supports the judgment, disregard contrary evidence, and draw all reasonable inferences to uphold the judgment. (*Harley-Davidson, Inc. v. Franchise Tax Bd.* (2015) 237 Cal.App.4th 193, 213 (*Harley-Davidson, Inc.*).) "It is not our role to reweigh the evidence, redetermine the credibility of the witnesses, or resolve conflicts in the testimony, and we will not disturb the judgment if there is evidence to support it." (*Ibid.*)

In every appeal, the appellant has the duty to fairly summarize all of the facts in the light most favorable to the judgment. (*Myers v. Trendwest Resorts, Inc.* (2009) 178 Cal.App.4th 735, 739; *Boeken v. Philip Morris, Inc.* (2005) 127 Cal.App.4th 1640, 1658.) "Further, the burden to provide a fair summary of the evidence 'grows with the complexity of the record. [Citation.]'" (*Boeken*, at p. 1658, citing *Western Aggregates, Inc. v. County of Yuba* (2002) 101 Cal.App.4th 278, 290.) To meet its burden on appeal to

14

show a finding of fact is not supported by substantial evidence, appellants cannot recite only evidence in their favor, but must " 'set forth in their brief *all* the material evidence on the point and *not merely their own evidence.* Unless this is done the error is deemed to be waived.' [Citations.]" (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 (*Foreman & Clark Corp.*).)

When an appellant's opening brief states only the favorable facts, ignoring evidence favorable to respondent, the appellate court may treat the substantial evidence issues as waived and presume the record contains evidence to sustain every finding of fact. (*Delta Stewardship Council Cases* (2020) 48 Cal.App.5th 1014, 1072 (*Delta Stewardship*); see also *Doe v. Roman Catholic Archbishop of Cashel & Emly* (2009) 177 Cal.App.4th 209, 218 [appellant waived substantial evidence challenge because "his opening brief sets forth only his version of the evidence, omitting any reference to the conflicting evidence submitted by [the respondent]"].) "As with all substantial evidence challenges, an appellant challenging [a finding of fact] must lay out the evidence favorable to the other side and show why it is lacking. Failure to do so is fatal. A reviewing court will not independently review the record to make up for appellant's failure to carry his burden." (*Defend the Bay v. City of Irvine* (2004) 119 Cal.App.4th 1261, 1266 (*Defend the Bay*).)

B

*Analysis.* Our review of the statement of facts in the appellant's opening brief filed by Slone shows that he consistently cited facts and evidence in his favor and omitted material evidence favorable to Center that supported the judgment. Importantly, Slone's statement of facts includes an extensive, "one-sided" discussion of evidence supporting his theory that Center took adverse actions in retaliation against him for reporting health

15

care safety issues, which discussion, on its face, is an argument more appropriately addressed to a trier of fact than to an appellate court. In particular, he cited evidence that supported his theory that Gwon cancelled or restricted his operating room block time in retaliation for his complaints, asserting she arbitrarily restricted and obstructed his block time. His statement of facts rejected Gwon's trial testimony that she was not involved in the actual allocation or reallocation of operating room block time, asserting her testimony that she only made recommendations based on utilization was "misleading and inaccurate." He also asserted that Gwon restricted his use of the surgical robot to only twice a month "with no plausible reason given." His statement of facts also presented a skewed version of the evidence regarding the cancellation of the surgeries he had scheduled for "July 18" [*sic*] (presumably July 20), 2017. He states that his surgeries had been scheduled for that morning, but were changed to the afternoon in retaliation against him. He asserts he did not abandon his patients, but he simply could not perform their surgeries in the afternoon because of his IPA obligations. He then characterized as "unbelievable" the testimony of Christian Tomaszewski, Center's chief medical officer, that he had tried to "chase down" Slone after the rescheduling but Slone's office was "shuttered."

While stating "facts" almost exclusively in his favor, Slone's statement of facts in his appellant's opening brief also omitted material evidence favorable to Center that supported the judgment in its favor. For purposes of brevity, we need not cite *all* the material evidence so omitted. Rather, based on our review of the record on appeal, we set forth below selected examples that reflect material evidence that Slone should have, but did not, include in his statement of facts. Importantly, Slone omitted most of the extensive evidence, including his own trial testimony, regarding his contractual

16

relationships with IVMSMG and IPA and his decision to leave his surgical practice to become IPA's full-time medical director. Also, regarding Slone's operating room block time, Slone's statement of facts omitted Gwon's testimony that she never took away any of his block time and had no authority to do so. His statement of facts also omitted Gwon's testimony that she did not, and had no ability to, limit his use of the surgical robot. Regarding his alleged noneconomic damages, Slone's statement of facts omitted the testimony of Angelica Camarena, who had known Slone at Center since 2013 and was currently working with Slone, that he was always a happy person, had never appeared depressed, and had never complained about having anxiety.

In summary, based on our review of the record on appeal, we conclude that Slone's statement of facts in his appellant's opening brief did not fairly state the material evidence in this case. As shown by the specific examples discussed above, his statement of facts consistently cited evidence in his favor and omitted material evidence favorable to Center that supported the judgment in its favor. Based on his failure to include a proper statement of facts in his appellant's opening brief, we conclude Slone has waived or forfeited all of his insufficiency of the evidence contentions, including his contentions that substantial evidence does not support the trial court's findings that: (1) Center had not retaliated against him in violation of section 1278.5; (2) Center overcame the rebuttable presumption that its suspension of his privileges were in retaliation for the complaints he made to it within 120 days of his suspension; (3) he had not suffered any economic damages; and (4) he had not suffered any noneconomic damages. (*Foreman & Clark Corp., supra*, 3 Cal.3d at p. 881; *Delta Stewardship, supra*, 48 Cal.App.5th at p. 1072.)

17

Assuming arguendo Slone has not waived or forfeited his substantial evidence contentions based on his improper statement of facts as concluded above, we nevertheless conclude he has failed to carry his burden on appeal to show the evidence, including all reasonable inferences therefrom, favorable to the trial court's findings and judgment is insubstantial. Slone simply cites evidence, and inferences therefrom, in support of his position and, based thereon, makes arguments more appropriately addressed to a trier of fact than to an appellate court. Slone cannot carry his burden on appeal by merely rearguing the "facts" as he would have them and/or reasserting his position at trial. (*In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507, 1531; *Conderback, Inc. v. Standard Oil Co.* (1966) 239 Cal.App.2d 664, 687.) Such a "factual presentation is but an attempt to reargue on appeal those factual issues decided adversely to [appellants] at the trial level, contrary to established precepts of appellate review. As such, it is doomed to fail." (*Hasson v. Ford Motor Co.* (1982) 32 Cal.3d 388, 398-399.)

Furthermore, in his appellant's opening brief, Slone inappropriately argues, among other things, that the trial court's finding of no retaliation by Center "was [a]gainst the [s]ubstantial [e]vidence," and that he "has shown by way of the substantial evidence introduced at trial that [Center] engaged in a sequence of retaliatory actions." His argument reflects a fundamental misunderstanding of the substantial evidence standard of review on appeal. As discussed above, in applying the substantial evidence standard of review, we determine whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding of fact. (*Grainger, supra*, 48 Cal.2d at p. 807.) We accept all evidence that supports the judgment, disregard contrary evidence, and draw all reasonable inferences to uphold the judgment. (*Harley-Davidson, Inc., supra*, 237 Cal.App.4th at p. 213.)

18

Therefore, Slone does not carry his burden on appeal by merely arguing that there was substantial evidence that could have supported a finding in his favor, rather than arguing that there was insufficient evidence to support the finding in Center's favor.[5]

In particular, Slone does not show there is insufficient evidence to support the trial court's finding that Center did not retaliate against him because of his complaints to it regarding health care safety. Rather, as Center argues, there is substantial evidence to support the court's findings that it did not retaliate against Slone and that he voluntarily resigned from IVMSMG and left his surgical practice to become the full-time medical director of IPA. In its FSOD, the court first found that Slone had complained to Center about patient safety issues within the meaning of section 1278.5. The court then addressed the question of whether Center had discriminated or retaliated against Slone in violation of section 1278.5 because of those complaints. In finding that Center had not discriminated or retaliated against Slone, the court discussed the evidence on each of his specific allegations of retaliation and rejected each one.

---

[5]     We also note that in his appellant's reply brief, Slone's counsel inappropriately argues that Slone was "shocked" when the trial court "turned a blind eye to the evidence and returned a defense verdict" that Slone "feels was an unmistakably partisan and selective interpretation of the evidence that left Dr. Slone with the distasteful feeling that he had been hometowned for having the audacity to take on the local hospital in a small rural venue." Such an ad hominen attack on the trial judge and unsupported allegation of bias should never be included in briefing by appellate counsel. We therefore condemn those statements by Slone's counsel and disregard them. (Bus. & Prof. Code, § 6068, subd. (b) [counsel has the duty "[t]o maintain the respect due to the courts of justice and judicial officers"]; *Niles Freeman Equipment v. Joseph* (2008) 161 Cal.App.4th 765, 794-795 [ad hominem attack by counsel is unseemly and unpersuasive]; *Fink v. Shemtov* (2010) 180 Cal.App.4th 1160, 1176 [personal attacks against trial judge "are inexcusable"].)

19

Regarding Center's July 17, 2017 letter granting him until July 2020 to become board-certified, the court found that the letter could not be construed as an adverse action, because it could be considered merely a "single threat of an adverse action to be taken in the future and, as such, it is not actionable." The court noted that Slone had three years to resolve the board certification issue and never lost his hospital privileges as a result of the letter. Furthermore, the letter attached a copy of an excerpt from the rules and regulations of Center's department of surgery, which expressly required that its members become board-certified. Based on that evidence, we conclude there is substantial evidence to support the court's finding that the July 17, 2017 letter did not constitute retaliatory action by Center for Slone's complaints regarding patient safety.

Regarding the September 7, 2017 suspension of Slone's privileges, the court discussed the evidence showing that Slone had not signed off or otherwise completed certain patient records despite Center's repeated requests that he do so. Erica Whannel, a Center managerial employee who contacted physicians for completion of patients' medical records, testified that she had contacted Slone numerous times after July 20, 2017, regarding his need to sign off on patient records. She further testified that Slone could have accessed those medical records electronically and signed off on them, but he did not do so. The court also found that Center's suspension of Slone's privileges could not be retaliation for his complaints because he previously had voluntarily separated from Center on July 20, 2017, when he left to become IPA's full-time medical director. Based on that evidence, we conclude there is substantial evidence to support the court's finding that Center's suspension of Slone's privileges on September 7, 2017, did not constitute retaliatory action by it for Slone's complaints regarding patient safety.

20

Regarding Center's position that Slone had voluntarily resigned his staff privileges as of March 2018, the court discussed Center's bylaws, which stated that 90 days after a physician has been suspended for failure to complete medical records, the physician is deemed to have voluntarily resigned his or her staff privileges. Because Center's suspension of Slone's privileges was not retaliatory and the evidence shows he failed to complete medical records, we conclude there is substantial evidence to support the court's finding that pursuant to Center's bylaws Slone was deemed to have voluntarily resigned his privileges and therefore that automatic resignation was not in retaliation for his complaints about patient safety.

Finally, the court discussed Slone's other allegations of retaliatory action by Center, including his allegations that it had limited his operating room block time, limited his use of the surgical robot, and conducted a sham peer review of one of his past surgeries. The court found that any changes to Slone's surgery time was done in due course by Center and not done for retaliatory reasons. It also found that Slone had not identified anyone at Center who had the authority to limit his use of the robot. Regarding the peer review case, the court found Gwon's testimony "very credible" that in conducting the peer review she had no motive to retaliate against Slone and that there was no evidence showing it was a sham review. The court ultimately found that none of the actions alleged by Slone to be retaliatory were of such a substantial and detrimental nature as to constitute adverse actions taken by Center in retaliation against him within the meaning of section 1278.5.

Based on our review of the record, we conclude that substantial evidence supports the court's finding that Center did not discriminate or retaliate against Slone because of his complaints about health care safety in

21

violation of section 1278.5.  In so concluding, we note, as discussed above, that we must accept all evidence that supports the judgment, disregard contrary evidence, and draw all reasonable inferences to uphold the judgment.  (*Harley-Davidson, Inc., supra*, 237 Cal.App.4th at p. 213.)  We cannot reweigh evidence, redetermine the credibility of the witnesses, or resolve conflicts in the testimony.  (*Ibid.*)  To the extent that Slone requests that we, as an appellate court, conduct an independent review of the evidence at trial (in his words, take "a fresh look with new eyes at the substantial evidence") and make our own determinations on witness credibility and the weight of the evidence, he misconstrues and/or misapplies the substantial evidence standard of review and we decline to do so.  (*Defend the Bay, supra*, 119 Cal.App.4th at p. 1266.)  Accordingly, we reject the relief that he seeks in his appellant's opening brief (i.e., that the evidence "should be weighed anew by the revieing [*sic*] court so as to generate findings, a decision, and judgment that comports with the substantial evidence introduced at trial").

Given our conclusion that substantial evidence supports the trial court's finding that Center did not discriminate or retaliate against Slone because of his complaints about health care safety, Slone has failed to carry his burden on appeal to show that substantial evidence does not support the court's finding on that essential element of his section 1278.5 cause of action and thus the judgment in Center's favor.  (*Alborzi, supra*, 55 Cal.App.5th at p. 179.)  The trial court's finding of absence of proof on that element precluded a judgment in Slone's favor.  Accordingly, we need not, and do not, address the question of whether there was also substantial evidence to support the court's additional findings that, assuming Center had so

22

retaliated, Slone had not shown he suffered any economic or noneconomic damages.[6]

## DISPOSITION

The judgment is affirmed.  Respondent to recover its costs on appeal.


HUFFMAN, J.


WE CONCUR:

McCONNELL, P. J.

KELETY, J.

---

6    In any event, we note, as discussed above, that the trial court found Slone's testimony regarding his April 3, 2017 contract with IPA and the following few months, including leaving his surgical practice, to be "less than credible."  The court found that Slone "abandoned" his patients on July 20, 2017, without explanation and never returned to the hospital.  In so doing, the court found that Slone "intended to leave surgical practice and give up his privileges with [Center] to pursue a career as a medical administrator.  The timing of the 2017 contract, which was prior to most of the alleged adverse actions, leads this Court to the conclusion that [Slone] already intended to make the career change; and the abandonment of patients literally waiting to be admitted for surgery and no evidence of any future patients substantiates this finding and conclusion."  The court further found that the opinions of Slone's expert witness on the amount of his alleged economic losses were "speculative."  Given those additional findings, we conclude there is more than substantial evidence to support the court's finding that Slone had not carried his burden to prove the elements of his section 1278.5 claim against Center.

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JOHNATHAN SLONE, M.D., | D082341 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. ECU000797) |
| EL CENTRO REGIONAL MEDICAL CENTER, | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendant and Respondent. | |

THE COURT:

The opinion in this case filed October 28, 2024, was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the requests pursuant to rule 8.1120(a) for publication are GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page one of said opinion be deleted and the opinion herein be published in the Official Reports.

McCONNELL, P. J.


Copies to: All parties